GEORGE I. SKINNER, as Superintendent of Banks of the State of New York, Respondent, *v.* HOME BANK OF BROOKLYN and WILLIAM A. MAIN, Appellants, Impleaded with DAVID A. SULLIVAN and Others, Defendants.

Second Department, December 29, 1919.

**Banks — insolvency — liability of stockholders — stock held as security for debt and pledged with voting trustees.**

Where the stock of a bank was pledged by the owners as security for a debt and after the insolvency of the bank the pledgees at the request of the owners of the stock and at the direction of the State Superintendent of

Banks delivered said stock to trustees under a voting trust formed by agreement of stockholders, to which the pledgees were not parties, in exchange for certificates issued by the trustees to be held by the pledgees as a substitute for the stock surrendered and the surrendered stock never stood on the books of the corporation in the names of the pledgees, but on the contrary in the names of the borrowers who transferred the same on the books to the trustees and received a new certificate pursuant to a scheme for reorganization, the pledgees were not record holders of the stock so as to be liable under section 71 of the Banking Law (Laws of 1909, chap. 10) for an assessment upon the shares when the reorganized bank in its turn became insolvent.

Moreover, irrespective of whether the pledgees were equitable owners of the stock, they are not liable for the debts of the corporation under said statute, for, being pledgees only, they come within the exception expressly provided by the Banking Law (Laws of 1909, chap. 10) which excepts from liability a person who holds stock as collateral security for the payment of a debt.

PUTNAM, J., dissents, with opinion.

REARGUMENT of an appeal by the defendants, Home Bank of Brooklyn and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 20th day of November, 1918, upon a decision of the court after a trial at Special Term.

This is an action to enforce alleged statutory liability of the defendants as stockholders in the Union Bank of Brooklyn, pursuant to the Banking Law (Consol. Laws, chap. 2 [Laws of 1909, chap. 10], § 71).

The action was commenced on April 4, 1912, by the plaintiff Superintendent of Banks of the State of New York against the various defendants, who are alleged to be record or registered stockholders and the legal owners of the capital stock of the Union Bank of Brooklyn, an insolvent banking corporation, to recover from them the amount of the value of their stock at par. The complaint alleges that the Superintendent of Banks took possession of the property and business of the Union Bank on April 4, 1910, pursuant to the provisions of section 19 of the Banking Law; * that the debts and liabilities of the bank exceeded the assets to an amount more than $1,000,000; that on June 1, 1911, the Superintendent determined that in

* Since amd. by Laws of 1910, chap. 452; now Banking Law (Consol. Laws, chap. 2; Laws of 1914, chap. 369), § 57 *et seq.*— [REP.

order to pay the liabilities it was necessary to enforce the individual liability of the stockholders, imposed by section 71 of the Banking Law,* and that he thereupon made an assessment and requisition upon them for the sum of $1,000,000 to be paid by the stockholders and each of them ratably on or before September 1, 1911, in the proportion of $100 upon each and every share of the stock held and owned on April 4, 1910. The complaint alleges that on the day last mentioned the defendant, appellant, Main was a record or registered stockholder in the bank and the legal owner of 125 shares of the capital stock of the par value of $12,500, and that the defendant, appellant, Home Bank of Brooklyn was similarly a stockholder and owner of 551½ shares of said stock of the par value of $55,150. As to the 551½ shares of stock, which plaintiff alleges were issued to and entered in the stock book of said bank in the name of the Home Bank of Brooklyn, the plaintiff alleges that certain other defendants were the equitable owners thereof. The complaint demands judgment that the defendants were stockholders and that each defendant be adjudged to pay the amount of the par value of his stock for the benefit of the creditors of the bank. The defendant, appellant, Main answered, denying that he was a stockholder in the bank, and also denying knowledge or information sufficient to form a belief as to the alleged excess of liabilities over assets, in any sum exceeding $2,500, and also as to the alleged necessity justifying the action of the Superintendent in enforcing individual liability on the stockholders of the bank. The answer of the defendant, appellant, Home Bank of Brooklyn admits the allegation in the complaint that certain other defendants were the equitable owners of the 551½ shares of stock charged to belong to said defendant, and denies that the Home Bank was at any time the legal or equitable owner of any part of the 551½ shares of stock described in the complaint or of any stock of the Union Bank of Brooklyn. Each of the defendants, appellants, sets up as a separate defense that the shares of stock alleged to be owned by said appellants, respectively, was stock of a bank known as the Mechanics and Traders' Bank pledged with said defendants as collateral

---

* Now Banking Law of 1914, § 120.— [REP.

security for the payment of a debt; that the Mechanics and Traders' Bank having closed its doors in July, 1908, a reorganization of said bank was effected by surrender of its capital stock which was reduced to one-half of its original par value, and merger of the bank with the Union Bank of Brooklyn, and that upon such reorganization, at the request of the owners of the stock so deposited as collateral, the shares so held were delivered to three voting trustees under a voting trust formed by agreement of the stockholders in furtherance of the reorganization; that neither of the defendants, appellants, were parties to or signed such voting trust agreement, and that they surrendered the collateral upon the promise that they would receive in exchange receipts or certificates from the voting trustees which they might substitute as collateral for the stock so surrendered; that thereafter such certificates were issued by said trustees and came into the possession of defendants, appellants, who held them at the date of the failure of the Union Bank in April, 1910, as the original debt had never been paid. These certificates were issued by and in the name of the voting trustees to the amount represented by the shares of stock surrendered. The stock of the Mechanics and Traders' Bank was reduced from $2,000,000 to $1,000,000 upon the reorganization, and the certificates issued by the trustees were to defendant, appellant, Main for 125 shares and to defendant, appellant, Home Bank for 551½ shares. Upon the face of the certificates the voting trustees declared that the holders thereof would be entitled to receive on the 1st day of July, 1913 (five years after the date of the certificates), or sooner at the option of the voting trustees, certificates for shares in the new stock of the Union Bank of Brooklyn in the amount mentioned. The original certificates of stock of the Mechanics and Traders' Bank surrendered had been canceled by the bank and a new stock certificate issued therefor to the voting trustees for 6,457½ shares. This certificate was dated January 15, 1909, and represented all of the stock surrendered by the stockholders under the voting trust agreement. The surrender and cancellation of the certificates and the issuance of the new certificate to the voting trustees were all regularly entered upon the books of the bank, and the new stock certificate was out-

standing in the names of the trustees at the date of the trial. The issuance of the certificates to the defendants, appellants, by the trustees of the voting trust was entered upon books kept by the Equitable Trust Company which acted as transfer agent for the trustees and the names of defendants, appellants, appeared upon that book as owners of the voting trust certificates.

The trial judge found as matter of fact at the request of defendant, appellant, Main, that he was one of the assistant cashiers of the National Park Bank, the institution originally holding the stock as collateral, and that the trustees' certificates were issued to him at his request; that he held no certificate of stock in the Union Bank as distinguished from the trustees' certificates; that the books relating to the shares of stock held by the voting trustees and to the stock trust certificates were in the custody of the Equitable Trust Company, and further that the original certificates of stock of the Mechanics and Traders' Bank were held by the National Park Bank as collateral security for indebtedness of Otto Heinze & Co., owing to said Park Bank, and that defendant, appellant, Main had no interest in said certificates of stock and was not holding them personally as security; that the loan secured by said certificates has never been paid; that the shares of stock of the Mechanics and Traders' Bank or the voting trust certificates have never been sold under the pledge thereof, and that defendant Main never voted on any stock of the bank or gave any proxy to vote thereon, nor has he received any dividends upon said stock.

And at the request of the defendant, appellant, Home Bank the trial court found as matter of fact that said bank had in its possession 1,103 shares of stock in the Mechanics and Traders' Bank standing in the names of various debtors and assigned in blank and held by the defendant bank as collateral security; that on the reorganization of the Mechanics and Traders' Bank in July, 1908, the debtors owning the stock requested the defendant, appellant, to deposit the collateral with the Equitable Trust Company under the voting trust agreement, taking their receipt therefor, which receipt or certificate was to be held as collateral in lieu of the stock certificates, and that the stock was delivered to

the Equitable Trust Company pursuant to such request; that the trust agreement was never signed by defendant Home Bank, and that when it deposited the stock at the request of the pledgors, it received temporary receipts or certificates from the voting trustees to take the place of the stock originally held as collateral security; that the certificates of the voting trustees were still in possession of the Home Bank at the time of the trial, the original debt remaining unpaid; that no stock certificates were issued to the Home Bank as distinguished from the certificates of the voting trustees; that the Home Bank never voted upon or received dividends as the holder of such trustees' certificates; that the books relating to the trustees' certificates were in the custody of the Equitable Trust Company.

But the trial judge found as matter of fact as to each of the defendants, appellants, that they were at the time of the trial stockholders of the Union Bank of Brooklyn, whether under that name or under that of the Mechanics and Traders' Bank, in the number of shares of stock represented by the certificates issued by the voting trustees, and as conclusions of law that plaintiff was entitled to a judgment against defendant, appellant, Main for $12,500 and against defendant, appellant, Home Bank for $55,100, with interest from September 1, 1911, and a *pro rata* part of the taxable costs of the action. Judgment was accordingly entered against Main for $18,160, and against the Home Bank for $80,121.92, and from this judgment the defendants appeal.

*Louis F. Doyle,* for the appellant William A. Main.

*Luke D. Stapleton* [*Conrad Saxe Keyes* and *Edwin V. Guinan* with him on the brief], for the appellant Home Bank of Brooklyn.

*Eugene Lamb Richards* [*Louis Goldstein* and *John B. White* with him on the brief], for the respondent.

KELLY, J.:

The learned trial judge filed an opinion with his decision and findings in this case in which he said of defendant Main, " It is contended on behalf of Mr. Main that he is not liable in this action for two reasons, *first,* that the stock is held as

collateral security and is therefore not within the terms of the statute, and *secondly*, that he is not a stockholder in the Union Bank within the meaning of the statute. The statute undoubtedly means that persons, who hold stock in a bank as collateral security which stock was not transferred to the person or corporation who holds it as collateral security thereby incur no liability; but in the event that the holder of the collateral security causes it to be transferred he is then liable under the provisions of the statute which make a holder of record liable in an action against stockholders. If stock is transferred to one with his knowledge and consent he becomes a stockholder of record and is liable even though the holder of the stock has it as collateral security (*Matter of Empire City Bank*, 18 N. Y. 199; *Richards* v. *Robin*, 178 App. Div. 535). There is no distinction in principle between the holder of certificates issued by the voting trustees and the holder of the certificate of stock of a bank. The holder of the certificate enjoys all the rights and benefits as such holder except the right of voting. That right may be and frequently is delegated by means of a proxy. The effect of a voting trust certificate is nothing more or less than a proxy and entitles the trustee to vote the stock for a given period of time. The holder of the certificate in question is by the terms of the voting trust agreement entitled to all the dividends when declared and received by the trustees and is therefore within the meaning of the statute a stockholder." And as to the defendant Home Bank of Brooklyn the learned judge said in his opinion: " The Home Bank of Brooklyn held a number of shares of stock of the Merchants [*sic*] and Traders Bank as part collateral security for loans which it had made. The record discloses that the certificates of the trustees were issued to that bank with its knowledge and consent. It cannot therefore evade responsibility." The conclusion of the learned trial judge thus stated is the foundation for the judgment appealed from. If these appellants were not " such persons as appear by the books of the corporation to be stockholders," or owners " of stock, legal or equitable, although the same may be on such books in the name of another person," they were not stockholders or responsible for the debts of the

bank. And even though they were legal or equitable owners of stock which was upon the books of the corporation in the name of another person, still they were not responsible for the debts of the bank, if the stock was held as collateral security for the payment of a debt. (*Van Tuyl* v. *Robin,* 160 App. Div. 41; affd., 211 N. Y. 540.) The Banking Law at the date of the transactions in the case at bar, and at the commencement of the litigation so provides in language concerning which there can be no doubt or controversy:

" § 71. Individual liability of stockholders. Except as prescribed in the Stock Corporation Law, the stockholders of every such corporation shall be individually responsible, equally and ratably, and not one for another, for all contracts, debts and engagements of such corporation, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares."

In *Chase* v. *Lord* (77 N. Y. 1) Judge Danforth, writing for the Court of Appeals concerning an act of the Legislature imposing liability for corporate debts upon stockholders, said: " In the first place, it is clear that there was no common law liability on the part of the testator; and the legal presumption is that all statutory conditions have been complied with. * * * So far as it [the act under consideration] subjects the stockholder to any responsibility for the corporate debts, it is manifestly in derogation of the common law (1 Parsons on Contracts, 143; *Stedman* v. *Eveleth,* 6 Metc. 114), and we are not at liberty to extend its effect beyond its literal terms, by enlarging or aggravating the liability of the stockholder. Says Chief Justice Shaw, in *Gray* v. *Coffin* (9 Cush. 199): * * * ' To create any individual liability of members for the debt of a corporation, a body politic, created by law, and regarded as a legal being, distinct from that of all the members composing it, and capable of contracting and being contracted with as a person, is a wide departure from established rules of law, founded in considerations of public policy, and depending solely upon provisions of positive law. It is, therefore, to be construed strictly, and not extended beyond the limits to which it is plainly carried by such provisions of statute.' "

In our effort to ascertain upon whom this liability, unknown

to the common law, is placed by the provisions of section 71 of the Banking Law we find that the Legislature has left no doubt as to what is meant by the word "stockholder" as used in the act. The statute, section 2, provides: "Stockholder.— The term 'stockholder,' when used in this chapter, shall apply not only to such persons as appear by the books of the corporation to be stockholders, but also to every owner of stock, legal or equitable, although the same may be on such books in the name of another person, but not to a person who may hold the stock as collateral for security for the payment of a debt." This provision was re-enacted by chapter 126 of the Laws of 1910.* This language appears to be plain and unambiguous, and it has been interpreted by the courts. "We believe, therefore, that the true meaning of section 2 of the Banking Law is to define stockholders as including (1) Every person who appears by the books of the corporation to be a stockholder; and (2) Every owner of stock, legal or equitable, though the same may be of record in the name of another, *except* a person who holds stock as collateral for security for the payment of a debt. Thus the first class is without exception; the second has but one exception. The second class is not a limitation of the first, but an addition to it." (*Van Tuyl* v. *Robin, supra.*)

It cannot be claimed in the case at bar that the defendants, appellants, are in the first class. They do not appear by the books of the corporation to be stockholders. The books of the corporation, whether we consider the Mechanics and Traders' Bank, or the reorganized Union Bank, contain no entry or mention of the appellants as stockholders. "The stock of every stock corporation shall be represented by certificates prepared by the directors and signed by the president or vice-president and secretary or treasurer and sealed with the seal of the corporation, and shall be transferable in the manner prescribed in this chapter and in the by-laws." (Stock Corp. Law [Consol. Laws, chap. 59; Laws of 1909, chap. 61], § 50; former Stock Corp. Law [Gen. Laws, chap. 36; Laws of 1890, chap. 564; Laws of 1892, chap. 688], § 40, as amd. by Laws of 1902, chap. 601.) And by section 32 of the

* See Banking Law of 1914, § 120. Id. § 3, as amd. by Laws of 1917, chap. 433.— [REP.

Second Department, December, 1919.          [Vol. 190.

present Stock Corporation Law* stock corporations are required to keep *at the office of the corporation* " a book to be known as the stock book, containing the names, alphabetically arranged, of all persons who are stockholders of the corporation, showing their places of residence, the number of shares of stock held by them respectively, the time when they respectively became the owners thereof, and the amount paid thereon." And a penalty of fifty dollars per day is imposed upon the corporation for every day of neglect to keep the stock book, with a like penalty upon officers or agents of the corporation who make improper entries therein or who refuse to exhibit it on demand during business hours to stockholders and judgment creditors of the corporation who are permitted to make extracts therefrom. (See, also, former Stock Corp. Law, § 29, as amd. by Laws of 1900, chap. 128, and Laws of 1901, chap. 354.) The stock of the borrowers who pledged it with the defendants, appellants, as collateral was duly entered on the stock book of the bank in the name of the owners, the borrowers. When pursuant to the request of such owners, made because " The Superintendent of Banks of the State of New York has absolutely required, as a condition to the re-opening the Bank, that stockholders place their stock in a voting trust in order that for the next five years of its existence the affairs of the Bank may be managed by voting trustees, whose appointment is subject to the approval of the Banking Department of this State," it was surrendered by the defendants to the trustees under the voting trust, it was not then in the names of the defendants. On the contrary, it was duly transferred on the books of the corporation from the names and ownership of the borrowers to the names and ownership of the three voting trustees, a new stock certificate was issued to the new owners and the stock stood in their names at the date of the trial. Surely, so far as the books of the corporation are concerned, there is no warrant for charging the defendants with this responsibility. The three trustees who thus acquired the record title to the stock upon the books of the corporation, and who at all times had in their possession the stock certificate issued

---

* Since amd. by Laws of 1916, chap. 127, and Laws of 1918, chap. **137.** — [REP.

by the corporation in accordance with law, issued receipts and certificates in their own names for the stock so surrendered. But these trustees had no power to issue stock certificates of the Union Bank or to transfer stock of the Union Bank and they did not assume to do so. That was something which could be done only by the corporation itself. They issued these certificates or receipts, indicating that in 1913, five years thereafter, if all went well, the owner of the stock would be entitled to receive stock certificates, but the trustees' certificates expressly declare upon their face that the stock so to be delivered is stock of the voting trustees. It is true that they assumed to issue their certificates in the name of defendant Main, and others in the name of defendant Home Bank. Neither defendant had transferred any stock to the trustees. The transfer was from the borrowers. But whether the certificates so issued to the defendants were valid or invalid as against the owners from whom the trustees derived title, there is no suggestion that the issuance of the trustees' certificates was ever entered upon the books of the Union Bank. The entry may have been made upon the books kept by the trustees or upon the books of the Equitable Trust Company, the transfer agent of the trustees, but these were not books of the Union Bank, nor were they kept by, or at the office of, the Union Bank. So far as any liability is asserted against defendants upon the theory that they appeared to be stockholders upon the books of the bank, there is no evidence to justify the claim. The evidence shows that this identical stock never stood in the names of defendants but was actually in the name of the borrowers or of the voting trustees. And when we turn to the second class of persons described as stockholders in the statute (§ 2, *supra*), we find that the defendants fall clearly within the exception from liability therein expressly set forth. Because, so far as the stock in question or the certificates representing it ever were in possession of the National Park Bank, or defendant Main, or the Home Bank of Brooklyn, they were at all times held, in the words of the statute, " as collateral for security for the payment of a debt." The defendants held the stock originally as pledgees to secure the payment of their loans to Heinze and Sullivan and the other borrowers, owners of the stock. They had no

other interest in it. When the Mechanics and Traders' Bank became involved in difficulties in 1908, and the reorganization was attempted with the approval of the State Banking Department, the defendants, at the request of the owners of the stock and under the requirement of the Banking Department, surrendered it to the voting trustees, receiving in place and stead thereof the receipts or certificates of the trustees, which they continued to hold as collateral. The defendants did not appoint the trustees. They were not parties to the agreement entered into by the stockholders upon the absolute requirement of the State Banking Department. The voting trustees were not their agents. The defendants looked to their original borrowers for the payment of their demand, and their consent to accept one form of collateral for another did not enmesh them in the toils and difficulties and liabilities of the stockholders of the Union Bank. There is no suggestion in the case that either of the appellants holding the stock as collateral procured its transfer as did the defendant in the case of *Van Tuyl* v. *Robin* (*supra*) and the collateral holders in *Matter of Empire City Bank* (18 N. Y. 199); *Anderson* v. *Philadelphia Warehouse Co.* (111 U. S. 479), and *Pauly* v. *State Loan & Trust Co.* (165 id. 606, 615). These certificates of the voting trustees are not stock certificates, they are not issued by or on behalf of the corporation. Standing by themselves, they confer no right to the issue of certificates of stock or the collection of dividends. Because they are issued not by the corporation itself, but by the trustees who are the stockholders upon the books of the corporation. They may be binding on the trustees, but the relation of the defendants to the Union Bank and its capital stock has not been changed.

These conclusions make it unnecessary to pass upon the additional point raised by the appellant Main, that the plaintiff failed to prove a cause of action under the Banking Law (§§ 19, 71) as in force at the date of the commencement of the action in 1912 and before the amendment (Laws of 1914, chap. 369, § 80) making the certificate of the Superintendent of Banks presumptive evidence of the facts therein stated, or to pass upon the exceptions taken by the appellants to the allowance of interest.

The judgment should be reversed, with costs, as to the defendants, appellants, Main and Home Bank of Brooklyn, and the complaint dismissed as against said defendants upon the merits, with costs.   This court reverses the seventh finding of fact of the learned judge at Special Term in so far as it finds that the defendants, appellants, were prior to the 4th day of April, 1910, stockholders of the Union Bank of Brooklyn whether under that name or that of the Mechanics and Traders' Bank.   Also the fifty-eighth finding of fact in so far as it refers to said defendants, appellants.   Also the first and second conclusions of law in so far as they declare liability upon the defendants, appellants, and direct judgment against them.   This court finds as matter of fact that the defendants, appellants, were not stockholders in the Union Bank, and that so far as they had any interest in said stock it was as collateral for the security for the payment of a debt. And as matter of law that the defendants, appellants, are entitled to judgment dismissing the complaint upon the merits, with costs.

RICH, BLACKMAR and JAYCOX, JJ., concur; BLACKMAR, J., in separate memorandum, with whom RICH, J., also concurs; PUTNAM, J., reads for affirmance.

BLACKMAR, J. (concurring):

Mr. Justice KELLY's opinion is exhaustive and accurate, but in view of the dissent a few additional remarks are perhaps permissible although superfluous.

I shall assume that we recognize the validity of the statutes of the State of New York referring particularly to the Banking Law (Consol. Laws, chap. 2 [Laws of 1909, chap. 10], § 71; now Banking Law [Consol. Laws, chap. 2; Laws of 1914, chap. 369], § 120).   The Banking Law of 1909 (§ 2, as amd. by Laws of 1910, chap. 126) and the Banking Law of 1914 (§ 120) define the word " stockholder " for the purpose, among other things, of enforcing the stockholders' liability required by the Constitution (Art. 8, § 7).   So defined, stockholders are, *first*, those who appear by the books of the corporation to be stockholders; *second*, every owner of the stock, legal or equitable, although the same may be on such books in the

name of another person, but not one who may hold the stock as collateral security for the payment of a debt.

If we regard the statute, these defendants are not liable unless they fall into one or the other of these classes.

Now, the defendants, holders of voting trust certificates, do not appear by the books of the corporation to be stockholders. Upon this point the evidence and findings of the court are conclusive.

If, therefore, they are stockholders, it must be that they are either legal or equitable owners of the stock and so fall within the second class. Now, I am not prepared to contend that holders of voting trust certificates like those under consideration are not equitable owners of the stock for which they were issued. Except for a certain disinclination to deliver an unnecessary although relevant *dictum*, I should say that they were, and this seems to me to be the suggestion of the dissenting opinion. But although these defendants, as holders of the voting trust certificates, may be equitable owners, yet they do not fall within the second class, because they are within the terms of the exception. They hold the voting trust certificates " as collateral for security for the payment of a debt." This fact also is conclusively established by the evidence and findings of the trial court.

Unless this reasoning is wrong, and I fail to detect any fallacy, these defendants cannot be held liable without disregarding the statutory definition of the term " stockholder."

Without regard to whether I like the result or the method of reorganizing the bank which was adopted, I decline to hold these defendants liable. When I find a statute lucidly expressed and plain and unambiguous in its meaning, I hold that the courts have no right to disregard it.

RICH, J., concurs.

PUTNAM, J. (dissenting):

On January 30, 1908, the Mechanics and Traders' Bank closed, and went into the hands of a receiver. The circular of June 16, 1908, to stockholders, declared that as a condition of reopening, the Superintendent of Banks required that the stock be put in a voting trust, so that for five years " the affairs of the Bank may be managed by voting trustees, whose

appointment is subject to the approval of the Banking Department." It announced the preparation of an agreement for this purpose, which had been signed by some of the stockholders. The old stock was to be surrendered, which capital reduced to $1,000,000 should be stock in the new name of the Union Bank, to be reissued to the voting trustees, whose control should continue till June 1, 1913.

Though the Home Bank did not sign this voting trust agreement, it acted under it, by depositing all its holdings of the Mechanics and Traders' Bank stock which as reduced through the reorganization were 551½ shares. It received from the voting trustees certificates in the following form:

" No.                          100                          Shares.
" UNION BANK OF BROOKLYN
" Stock Trust Certificate
" This is to Certify that as hereinafter provided Home Bank of Brooklyn (hereinafter called the stockholder) will be entitled to receive on the first day of July, 1913, or sooner at the option of the undersigned voting trustees, a certificate or certificates for ........ shares of the new issue of stock of the Union Bank of Brooklyn (formerly the Mechanics and Traders' Bank) of the par value of One Hundred Dollars."

The certificate gave the holder a right to payments equal to dividends, if any, when collected by the trustees. It expressly reserved all voting rights to the trustees. A concluding clause was that " on surrender hereof or cancellation or transfer the undersigned voting trustees may treat the registered holder as owner hereof for all purposes whatsoever, to accept delivery of stock certificates hereunder which shall not be made without a surrender hereof."

Permanent certificates in like form were issued by the voting trustees in the name of the appellant Main for 125 shares, which he still holds.

If, as stated in the reorganization circular already quoted, the Superintendent required this voting trust (probably to restore confidence through the three persons thus placed in control), such corporation methods were only constitutional, if they preserved to creditors and maintained in force as against the complying stockholder the burdens and penalties

of bank stock ownership. Like certificate holders under a five-year voting trust issued to four corporations entitling them to stock in the new organization, were held taxable as future transfers of stock, under section 270 of the Tax Law (as added by Laws of 1910, chap. 38).* ( *United States Radiator Corp.* v. *State of New York*, 151 App. Div. 367; affd., 208 N. Y. 144.) COLLIN, J., there said of such voting trust: " The four corporations did not transfer the shares owned by them to the trust company. They caused the record title to them to be placed in the trust company temporarily and for an expressed and limited purpose. They remained the owners of the stock. Their ownership was subject to the right of the trust company to vote the shares at corporate elections, but the power to transfer the shares, subject to the right of the trust company to vote them, remained in the corporations."

I cannot accept the view that despite the terms of the Constitution, article 8, section 7, declaring the liability of bank stockholders, this voting trust could be made a defensive screen behind which the stockholder was immune from liability, because his stock was evidenced by voting trust certificates, especially where the certificate holder appeared as owner, and not as a lender on collateral.

I am, however, of opinion that under the law as it stood September 1, 1911, the date of the call on defendants for payment, the declaration of the Superintendent of Banks had not the force and effect of a like determination of the Federal Comptroller of the Currency. Therefore, under *Burr* v. *Wilcox* (22 N. Y. 551); *Handy* v. *Draper* (89 id. 334), and *Tuzzeo* v. *American Bonding Co.* (226 id. 171), interest should be computed from the date the suit was begun. So I would modify the judgment by excluding interest prior to April 4, 1912, but vote otherwise that it be affirmed.

Judgment reversed on reargument, with costs, as to the defendants, appellants, Main and the Home Bank of Brooklyn, and complaint dismissed upon the merits, with costs, as against said defendants, in accordance with opinion by KELLY, J. Settle order on notice.

---

* Since amd. by Laws of 1911, chap. 352; Laws of 1912, chap. 292, and Laws of 1913, chap. 779.— [REP.