In the Matter of the Application of FRANCIS M. BACON and Others, Copartners, etc., and Others, for the Appointment of Appraisers to Determine the Value of the Voting Trust Certificates of the Class A Capital Stock of the SUSQUEHANNA SILK MILLS or of the Shares of Stock of Said Class A Represented by Said Voting Trust Certificates, Owned by Them, Pursuant to Section 21 of the Stock Corporation Law of the State of New York, Petitioners, Respondents.

SUSQUEHANNA SILK MILLS, Appellant.

Appeal by Susquehanna Silk Mills from an order of the Supreme Court, entered in the New York county clerk's office on April 24, 1941, granting petitioner's motion for the appointment of appraisers to determine the value of shares of Class A stock of said Susquehanna Silk Mills.

Order affirmed, with costs. No opinion.

Present — Martin, P. J., O'Malley, Glennon, Cohn and Callahan, JJ.; Martin, P. J., dissents and votes to reverse and dismiss the proceeding; dissenting opinion by Martin, P. J.

MARTIN, P. J. (dissenting). The appellant, Susquehanna Silk Mills, is a corporation organized and existing under the laws of the State of New York. The capitalization of the corporation consists of an authorized issue of Class A and Class B capital stock. All of the issued and outstanding capital stock of the two classes is registered in the names of voting trustees in accordance with the terms of a voting trust agreement dated March 16, 1936. This voting trust agreement was part of a plan for the reorganization of the corporation under section 77B of the Bankruptcy Act, pursuant to an order of the District Court of the United States for the Southern District of New York, dated February 19, 1936. In exchange for the capital stock of the corporation the trustees issued voting trust certificates indicat-

ing that the owner would be entitled to shares of the designated class of the capital stock on March 16, 1941, or at the earlier termination of the trust agreement. The respondents are the registered holders of voting trust certificates entitling them to 8,927 shares of Class A capital stock.

The voting trust agreement provided, and the voting trust certificates recited, that until March 16, 1941, or until the prior termination of the agreement, the voting trustees, or their successors, would possess and be entitled to exercise all rights of holders of both Class A and Class B stock of every kind and nature, including the right in all such stock to vote and consent to any corporate act of the company. The voting trustees had the privilege (but not the obligation) of asking voting trust certificate holders for instructions with respect to voting the stock for any purpose other than the election and removal of directors. It was provided that a vote of the holders of a majority in interest of voting trust certificates with respect to matters upon which instructions were sought would constitute the instructions upon which the trustees should act.

The appellant received an offer for the purchase of its assets, exclusive of cash and certain specified items. On recommendation of the directors of the appellant the voting trustees called a meeting of the holders of the voting trust certificates to consider the proposal for the purchase of the assets of the corporation and also to decide whether the corporation should be dissolved in the event of a sale of the assets. Complete information covering the transaction was furnished to the voting trust certificate holders. The sale and consequent liquidation were approved by holders of 145,361 shares of stock, with the holders of 35,185 shares voting in opposition. Thereafter, at a special meeting of stockholders of the appellant, the voting trustees voted all of the issued and outstanding stock in favor of the sale, and later consented to the dissolution of the corporation.

Prior to, at and subsequent to the meeting of the voting trust certificate holders, the respondents objected to the sale. There is no question as to the timeliness of such objection.

This proceeding was instituted on the theory that under the provisions of sections 20 and 21 of the Stock Corporation Law the respondents, as objecting stockholders, are entitled to have their stock appraised and to be paid the amount of the appraisal.

Section 20 of the Stock Corporation Law reads, in part, as follows:

" § 20. Voluntary sale of franchise and property and rights of objecting stockholders. * * *

" Any stockholder not voting in favor of such proposed sale and conveyance may at any time prior to the vote thereon — or if notice of the meeting was not mailed to him at least twenty days prior to the taking of such vote, then within twenty days after the mailing of such notice — object to such sale and conveyance and demand payment for his stock, and thereupon such stockholder or the corporation shall have the right, subject to the conditions and provisions of section twenty-one, to have such stock appraised and paid for as provided in said section. Such objection and demand must be in writing and filed with the corporation."

The enforcement of a statutory right is sought. To succeed, the petitioners must bring themselves within the class mentioned in the law. We are not concerned with what their status would be in equity.

Neither the General Corporation Law nor the Stock Corporation Law defines the term " stockholder." Section 113-a of the Banking Law defines " stock-

holder," as used therein, to include every owner of stock, legal or equitable. That definition is not helpful here, as it is intended to have special application to the individual responsibility of bank and trust company stockholders for the obligations of the banking corporation. Furthermore, section 50 of the Stock Corporation Law, which makes voting trust agreements lawful, specifically provides that it is not applicable to a banking corporation.

In 18 Corpus Juris Secundum (p. 1144) it is said: " The term stockholder ordinarily is taken to apply to the holder of the legal title to shares, but such application is not exclusive, and in a proper case the term may apply as well to the equitable owner of shares."

As we have indicated, this is purely a proceeding under a statute. Persons holding stock as trustees are generally regarded as stockholders for all legal purposes. (*Bay State Distributing Corporation* v. *Doran*, 33 F. [2d] 782; modfd. on other grounds, 36 id. 657.) Where legal title is in the name of a trustee, he alone has power to maintain an action to protect and defend the same, and the beneficiary of the trust is not a necessary or proper party to the action. (*Robinson* v. *Adams*, 81 App. Div. 20; affd., 179 N. Y. 558.)

Text writers state, generally, that a holder of a voting trust certificate has the same general legal rights as a stockholder. There may be some authorities in other jurisdictions in support of that statement, but our attention has not been called to any decision by a New York appellate court holding to that effect.

In *Skinner* v. *Home Bank of Brooklyn* (190 App. Div. 187; affd., 230 N. Y. 631) the defendants were pledgees of voting trust certificates representing stock of the bank, the certificates being registered in the name of the pledgors. The action was brought to enforce the liability of the defendants as stockholders of the closed bank. In reversing an assessment against the defendants which had been upheld by the lower court on the ground that there was no distinction in principle between the holder of a voting trust certificate and the holder of a certificate of stock, the court said that the certificates had been pledged as collateral security and, in pointing out that the defendants were not stockholders, said:

" * * * These certificates of the voting trustees are not stock certificates, they are not issued by or on behalf of the corporation. Standing by themselves, they confer no right to the issue of certificates of stock or the collection of dividends. Because they are issued not by the corporation itself, but by the trustees who are the stockholders upon the books of the corporation. They may be binding on the trustees, but the relation of the defendants to the Union Bank and its capital stock has not been changed. * * *

" * * * This court finds as matter of fact that the defendants, appellants, were not stockholders in the Union Bank, and that so far as they had any interest in said stock it was as collateral for the security for the payment of a debt. And as matter of law that the defendants, appellants, are entitled to judgment dismissing the complaint upon the merits, with costs."

Recently, in *Lord* v. *Susquehanna Silk Mills* (260 App. Div. 1015) this court held that a voting trust certificate holder could not maintain a stockholder's derivative action in the absence of allegations of demand and refusal to sue by the voting trustees.

The statute refers to stockholders who object to and do not vote in favor of the sale. It contemplates those having a right to vote. Under the voting trust

agreement, the voting power is separated from the beneficial ownership. (*Matter of Morse*, 247 N. Y. 290.) The respondents cite *Matter of Kinney* (279 N. Y. 423) in support of the contention that voting rights are not essential. That proceeding, however, was instituted to enforce rights of preferred stockholders under subdivision 9 of section 38 of the Stock Corporation Law, which relates to preferred stockholders without voting rights.

Voting trust agreements are lawful in this State. (*Matter of Morse, supra.*) The agreement before us confers on the trustees the broadest discretionary powers. It is urged that while it was intended to vest in the trustees the voting power in respect to the stock, it was not contemplated that the stockholders would be deprived of any statutory safeguard provided for their protection under the corporation laws of this State. We find no reservation in the agreement. The petitioners agreed to be bound by the instructions of a majority in interest of the voting trust certificate holders. In accordance with this agreement the voting trustees have voted all of the stock in favor of the sale and liquidation. The respondents now attempt to repudiate the agreement and attempt to create the anomolous situation of having one person voting for the sale and another person, claiming to be the holder of the same shares, opposing the sale and asserting the right of appraisal.

The record establishes that all of the stockholders voted in favor of the sale. The respondents do not bring themselves within the provisions of section 20 of the Stock Corporation Law, and are not entitled to the relief sought.

The order appealed from should be reversed, with costs, and the proceeding dismissed.