In the Matter of the Application of EDWARD P. MORSE, Appellant.

GERALD CLOKEY et al., Copartners under the Firm Name of CLOKEY & MILLER et al., Appellants; THE BANK OF AMERICA et al., Respondents.

Corporations — voting trust agreements — banks and banking — constitutional law — validity in this State of voting trust agreements ruled by Stock Corporation Law, § 50 — voting trust agreement between stockholders of banking corporation valid before amendment by chapter 120 of Laws of 1925 — holders of bank stock prohibited thereby from entering into voting trust agreements — statute retroactive — trustees under voting trust agreement made prior to amendment of statute without right to vote stock at election of directors of banking corporation — regulatory laws applicable to private contract rights which conflict with public policy — amendment within reserve power of Legislature to amend corporate charters — trustee acquired no property interest under voting trust agreement.

1. The test of validity of voting trust agreements in this State is the rule of the statute (Stock Corporation Law, § 50; Cons. Laws, ch. 59) and, prior to its amendment by chapter 120 of the Laws of 1925, by no rule of statutory construction were banking corporations excluded from its operation. A trust agreement, therefore, entered into between stockholders of a domestic banking corporation December 31, 1924, conferring on trustees the right to vote on stock transferred to them, was at that time valid.

2. By the amendatory statute, however, which added to section 50 the words, " this section shall not apply to a banking corporation " a new public policy was declared. The Legislature decreed that it is to the public advantage to withhold from the stockholders of a banking corporation the privilege of membership in voting trusts.

3. And the statute operates retrospectively. It is not a mere repealing statute. It creates a specific exception to the existing law. The general object and the context of the language used indicate that the new law operates on existing rights by direct action as well as repeal. (Gen. Const. Law, § 110; Cons. Laws, ch. 22.) It follows that no existing rights of stockholders or voting trustees are saved by force of the provisions of section 93 of the General Construction

Law, relative to the effect of a repealing statute upon rights accrued prior to the repeal of a statute.

4. Furthermore, the Legislature has provided that it is essential to the validity of a voting trust agreement that any stockholder may become a party thereto. The right and power to transfer his stock to trustees rested in the provisions of section 50 and, when the section ceased to be applicable, that right and power became non-existent. No other statute permitted a stockholder to transfer his shares to a voting trust. Such an agreement must exist in its entirety or it ceases to be valid, and when stockholders who had not already entered into it were prohibited from becoming parties thereto it became invalid in its entirety. Trustees, under a voting trust agreement, entered into prior to the date when the amendment went into effect, were, therefore, without right after that date to vote the stock held by them at an election of directors of a banking corporation.

5. Regulatory laws, reasonable in character, designed to accomplish a legitimate public purpose, and enacted to promote the public welfare apply even to private contract rights when the public policy is appropriately declared and defined and the two conflict. Moreover, the amendment comes within the reserved power to amend corporate charters so as to regulate methods of administration and details of procedure in the interest of the public and of all concerned. It cannot be said that the trustees have acquired any property interest under the voting trust agreement of which they are deprived by the statute.

*Matter of Morse (Bank of America)*, 220 App. Div. 830, reversed.

(Argued December 15, 1927; decided February 14, 1928.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered June 24, 1927, which affirmed an order of Special Term denying a motion for review of an election of directors of the Bank of America, made under section 32 of the General Corporation Law.

*Nathan L. Miller* and *Harold Otis* for Edward P. Morse, appellant. The voting trust statute never applied to banks, being in fundamental conflict with the whole scheme of the Banking Law for responsible bank management in the paramount public interest. (*Van Tuyl* v. *Scharmann,* 208 N. Y. 53; *People ex rel. Bd. of Education* v. *Graves,* 243 N. Y. 204; *Nassau Bank* v. *Jones,* 95 N. Y.

115; *Noble State Bank* v. *Haskell*, 219 U. S. 104; *Dillingham*
v. *McLaughlin*, 264 U. S. 370.) If the voting trust
atatute ever applied to banks, it did not apply to banks
sfter March 12, 1925, the effective date of the amendment
thereto expressly declaring that it did not so apply. The
effect of this amendment was not merely to forbid the
subsequent making of new bank voting trust agreements;
nor was it merely to forbid also the subsequent addition
of new parties to such agreements theretofore made
between other parties; but it was to forbid the subsequent
exercise of voting powers by bank voting trustees under
whatever agreements whenever made. (*Noble State Bank*
v. *Haskell*, 219 U. S. 104; *Shallenberger* v. *First State
Bank*, 219 U. S. 114; *Assaria State Bank* v. *Dalley*, 219
U. S. 121; *Engel* v. *O'Malley*, 219 U. S. 128; *Dillingham*
v. *McLaughlin*, 264 U. S. 370; *People* v. *Formosa*, 131
N. Y. 478; *Gause* v. *Commonwealth Trust Co.*, 196 N. Y.
134; *Matter of Wulfsohn* v. *Burden*, 241 N. Y. 288; *Lord*
v. *Equitable Life Assurance Society*, 194 N. Y. 212; *People*
v. *O'Brien*, 111 N. Y. 1; *Miller* v. *State*, 15 Wall. 478;
*Looker* v. *Maynard*, 179 U. S. 46.) The 1925 amendment
to the voting trust statute, expressly declaring it
inappliciable to banks, forbade the subsequent joinder
of additional parties to bank voting trust agreements
previously existing between other parties, even assuming
that it did not forbid the further operation of such
agreements as between the existing parties thereto.
(*Matter of Wentworth*, 230 N. Y. 176.)

*Frank H. Stewart, Henry L. Sherman* and *Abel E.
Blackmar* for intervening stockholders, appellants. The
amendment to section 50 of the Stock Corporation Law
prohibited the voting trustees after March 12, 1925, from
voting or accepting for deposit under the voting trust
agreement any stock of the Bank of America. (*Hyatt* v.
*Taylor*, 42 N. Y. 258; 1 Kent Comm. 462; 1 Black.
Comm. 86; *Matter of Jannicky*, 209 N. Y. 413; *Woollcott*

v. *Shubert*, 217 N. Y. 212; *Aldridge* v. *Williams*, 3 How.
9; *County of Cumberland* v. *Boyd*, 113 Penn. St. 52;
*People* v. *Feitner*, 168 N. Y. 360; *Matter of Cram*, 69
N. Y. 452; Freund on Police Power & Public Policy,
686; *Louisville & Nashville R. R. Co.* v. *Mottley*, 219
U. S. 467; *U. S.* v. *Trans-Missouri Freight Assn.*, 166
U. S. 290; *South & Central American Commercial Co.,
Inc.,* v. *Panama Railroad Co.*, 237 N. Y. 287; *People*
v. *Hawkins*, 157 N. Y. 1; *New York State Loan & Trust
Co.* v. *Helmer*, 77 N. Y. 64; *Kellogg* v. *Larkin*, 3 Pinney
[Wis.], 123; *Matter of Harbeck*, 161 N. Y. 211; *Swiss
Insurance Co.* v. *Miller*, 267 U. S. 42; *Mosle* v. *Bidwell*,
130 Fed. Rep. 334.)   The Legislature had constitutional
authority to prohibit the voting of deposited stock, and
the acceptance of further deposits. ( *U. S.* v. *Freight
Assn.*, 166 U. S. 291; *Johnston* v. *U. S.*, 17 Ct. of Claims,
157; *Cox* v. *Hart*, 260 U. S. 427; *City of Rochester* v.
*Rochester R. Co.*, 182 N. Y. 99; *Brearley School* v. *Ward*,
201 N. Y. 358; *W. U. T. Co.* v. *L. & N. R. Co.*, 268
Fed. Rep. 4; 258 U. S. 13; *Matter of Wentworth*, 230
N. Y. 176; *Metcalfe* v. *Union Trust Co.,* .181 N. Y. 39;
*City of Rochester* v. *Rochester R. Co.*, 182 N. Y. 99;
*Louisville & Nashville R. R. Co.* v. *Mottley*, 219 U. S. 467;
*Douglas* v. *Kentucky*, 168 U. S. 488; *Knox* v. *Lee*, 12
Wall. 457.)

*John Godfrey Saxe* and *Louis S. Posner* for intervening
certificate holders, appellants.   The essence of a voting
trust, and the provisions of the Bank of America trust,
conflict with the provisions of the Banking Law and the
statutory public policy pursuant to which they were
enacted.   ( *Knickerbocker Invest. Co.* v. *Voorhees*, 100 App.
Div. 414; *Manson* v. *Curtis*, 223 N. Y. 313; *Nassau
Bank* v. *Jones*, 95 N. Y. 115; *Noble State Bank* v. *Haskell*,
219 U. S. 104; *Dillingham* v. *McLaughlin*, 264 U. S.
370; *Schley* v. *Andrews*, 225 N. Y. 110; *Kavanaugh* v.
*Commonwealth Trust Co.*, 223 N. Y. 103; General Cor-

poration Law, § 321; *Gause* v. *Boldt*, 49 Misc. Rep. 340; 115 App. Div. 897; 188 N. Y. 546; *Van Tuyl* v. *Scharmann*, 208 N. Y. 53; *Matter of Bronson*, 177 App. Div. 374; 221 N. Y. 661; *Cheney* v. *Scharmann*, 145 App. Div. 456.) The agreement cumulatively violates public policy as expressed in specific provisions of law. (*Eastham* v. *New York State Telephone Co.*, 86 App. Div. 562; *Torbett* v. *Eaton*, 49 Hun, 209; 113 N. Y. 623; *Schley* v. *Andrews*, 225 N. Y. 110; *Bridgers* v. *First Nat. Bank*, 152 N. C. 293; *Matter of Glen Salt Co.*, 17 App. Div. 234; 153 N. Y. 688; *People ex rel. Miller* v. *Cummings*, 72 N. Y. 433; *Manson* v. *Curtis*, 223 N. Y. 313; *Nat. Liberty Ins. Co.* v. *Bank of America*, 126 Misc. Rep. 759; *Kavanaugh* v. *Commonwealth Trust Co.*, 223 N. Y. 103; *Kavanaugh* v. *Gould*, 147 App. Div. 281; *Van Tuyl* v. *Scharmann*, 208 N. Y. 53.) The amendment of 1925 was an effective prohibition of all voting under voting trust agreements of bank stock, whenever formed. (*People* v. *Railroad*, 194 N. Y. 130; *Tompkins* v. *Hunter*, 149 N. Y. 117; *Bank* v. *Collector*, 3 Wall. 495; *Ex parte Crow Dog*, 109 U. S. 556; *Morgan* v. *Hedstrom*, 164 N. Y. 224; *Woollcott* v. *Shubert*, 217 N. Y. 212; *American Bank* v. *Goss*, 236 N. Y. 448; *Croveno* v. *Atlantic Ave. R. R. Co.*, 150 N. Y. 225.) The amendment of March 12, 1925, was a valid prohibition against the further voting of bank stock by voting trustees; it did not interfere with any property right of vote but only with the manner or method of expressing the vote. (*People* v. *O'Brien*, 111 N. Y. 1; *Lord* v. *Equitable Life Assur. Soc.*, 194 N. Y. 212; *Grobe* v. *Erie County Mut. Ins. Co.*, 39 App. Div. 183; 169 N. Y. 613; *Caminetti* v. *United States*, 242 U. S. 470; *Woollcott* v. *Shubert*, 217 N. Y. 212; *Lapina* v. *Williams*, 232 U. S. 79; *Duplex Printing Press Co.* v. *Deering*, 254 U. S. 443; *Aldridge* v. *Williams*, 3 How. [U. S.] 9; *U. S.* v. *Trans-Missouri Freight Association*, 166 U. S. 290; *Omaha Co.* v. *Interstate Commerce Commission*, 230 U. S. 324.)

*Albert Ottinger, Attorney-General (C. T. Dawes* of counsel), for State of New York.   No action of the present Superintendent of Banks or his predecessors discloses a policy of the State in favor of voting trusts for bank shares.   (*Iselin* v. *United States,* 270 U. S. 245.)   Section 50 of the Stock Corporation Law never was intended for banks.   (*Holy Trinity Church* v. *United States,* 143 U. S. 457; *Matter of Meyer,* 209 N. Y. 386; *Murray* v. *N. Y. C. R. R. Co.,* 4 Keyes, 274; *People ex rel. Wood* v. *Lacombe,* 99 N. Y. 43; *Murray* v. *Gibson,* 15 How. [U. S.] 421; *State ex rel. Heiden* v. *Ryan,* 99 Wis. 123.)   The amendment of 1925 was a clarifying legislative declaration added to the statute because banks were misreading section 50 and starting to use the voting trust.   (*People* v. *Davenport,* 91 N. Y. 574; *People ex rel. Mut. Life Ins. Co. of N. Y.* v. *Bd. of Supervisors,* 16 N. Y. 431.)

*Charles E. Hughes, Henry Root Stern, Bertram F. Shipman* and *S. S. Jennings, Jr.,* for respondents.   The trust agreement was valid at the time it was entered into on December 31, 1924.   (2 Machen on Modern Law of Corporations, §§ 1269, 1270; 3 Cook on Corporations [8th ed.], § 622; 3 Fletcher on Corporations, §§ 1705–1707; 10 Harvard Law Review, 428, " Corporate Voting & Public Policy; " *Brightman* v. *Bates,* 175 Mass. 105; *Bowditch* v. *Jackson Company,* 76 N. H. 351; *Thompson-Starrett Company* v. *Ellis Granite Company,* 86 Vt. 282; *Smith* v. *San Francisco & North Pacific Railway,* 115 Cal. 584; *Clark* v. *Foster,* 98 Wash. 241; *Mackin* v. *Nicollet Hotel, Inc.,* 10 Fed. Rep. [2d] 375; *United States* v. *Chemical Foundation,* 272 U. S. 1; *Cone* v. *Russell,* 48 N. J. Eq. 208; *Frost* v. *Carse,* 91 N. J. Eq. 124; *Mobile & Ohio Railroad* v. *Nicholas,* 98 Ala. 92; *Ecker* v. *Kentucky Refining Co.,* 144 Ky. 264; *Bullivant* v. *First Nat. Bank of Boston,* 246 Mass. 324; *Hellier* v. *Achorn,* 255 Mass. 273; *Byington* v. *Piazza,* 131 App. Div. 895.) At the time the trust agreement was entered into there

was no public policy against voting trusts of bank shares. (*Skinner* v. *Home Bank of Brooklyn*, 190 App. Div. 187; *United States* v. *Freight Assn.*, 166 U. S. 290; *Hollis* v. *Drew Theological Seminary*, 95 N. Y. 166; *Baltimore & Ohio, etc., Ry. Co.* v. *Voigt*, 176 U. S. 498; *Hirshfeld* v. *Bopp*, 145 N. Y. 84; *Van Tuyl* v. *Scharmann*, 208 N. Y. 53.) Section 26 of the General Corporation Law evidences no public policy against the trust agreement. (Cushing on Voting Trusts [ed. 1927], 162; *Boyer* v. *Nesbitt*, 227 Penn. St. 398; *Ervin* v. *Phila. & Reading R. Co.*, 7 Railway & Corp. L. J. 87; *Carnegie Trust Co.* v. *Security Life Ins. Co.*, 111 Va. 1; *Brightman* v. *Bates*, 175 Mass. 105; *Lord* v. *Equitable Life Assur. Soc.*, 194 N. Y. 212; *United States* v. *Moore*, 95 U. S. 760; *Matter of Washington St. Asylum & Park R. R. Co.*, 115 N. Y. 442.) The trust agreement was in no wise affected by the 1925 amendment of section 50 of the Stock Corporation Law. (*Matter of Miller*, 110 N. Y. 216; *People ex rel. Fleming* v. *Dalton*, 158 N. Y. 175; *Woollcott* v. *Shubert*, 217 N. Y. 212; *Matter of Meng*, 188 App. Div. 69; *Coutant* v. *People*, 11 Wend. 512; *United States* v. *St. Paul, M. & M. Ry. Co.*, 247 U. S. 310; *Duplex Co.* v. *Deering*, 254 U. S. 443; *United States* v. *Thind*, 261 U. S. 204; *Hecht* v. *Malley*, 265 U. S. 144; *Ex parte Farley*, 40 Fed. Rep. 66; *Tompers* v. *Bank of America*, 217 App. Div. 698; *N. Y. & Oswego M. R. R. Co.* v. *Van Horn*, 57 N. Y. 473; *Standard C. & M. Corp.* v. *Waugh C. Corp.*, 231 N. Y. 51; *People* v. *Supervisors, etc.*, 43 N. Y. 130; *People ex rel. P. S. L. Assurance Soc.* v. *Miller*, 179 N. Y. 227; *Germania Savings Bank* v. *Suspension Bridge*, 159 N. Y. 362.) The amendment of March 12, 1925, would be unconstitutional if applied to this agreement. It would impair contract obligations and deprive of property without due process of law. (*People* v. *O'Brien*, 111 N. Y. 1; *Mayor, etc.*, v. *Twenty-third St. R. Co.*, 113 N. Y. 311; *Boswell* v. *Security Mut. Life Ins. Co.*, 193 N. Y. 465; *Lord* v. *Equitable Life Assur. Soc.*, 194 N. Y. 212; *N. Y. C. & H. R. R. R. Co.*

v. *Williams*, 199 N. Y. 108; *Stearns* v. *Minnesota*, 179 U. S. 223; *Shields* v. *Ohio*, 95 U. S. 319; *Sinking-Fund Cases*, 99 U. S. 700; *Chicago, Milwaukee & St. Paul R. R. Co.* v. *Wisconsin*, 238 U. S. 491; *Sturges* v. *Crowninshield*, 4 Wheat. 122.)

POUND, J. This is a proceeding to review the election of directors of the respondent, The Bank of America, a domestic banking corporation, held January 11, 1927. The question is as to the right of trustees under a voting trust agreement entered into prior to March 12, 1925, to vote the stock held by them at such election.

A voting trust agreement confers on voting trustees the right to vote on stock transferred to them for such purpose, irrevocably for a definite period. Stock transferred under such an agreement is canceled and trust certificates are issued by the trustees to the stockholders. The right to vote is thereby separated from the beneficial ownership of the stock. The courts below have upheld the validity of the agreement in question.

Voting trust agreements whereby the voting power of the stock is separated from its beneficial ownership have been the subject of discussion and wide differences of opinion. They have, in some jurisdictions in the absence of statutory restrictions, been held within the policy of our law and lawful so long as their object is to carry out a particular policy to promote the best interests of all the stockholders or the corporation. (*Brightman* v. *Bates*, 175 Mass. 105; *Carnagie Trust Co.* v. *Security Life Ins. Co.*, 111 Va. 1; *Thompson-Starrett Co.* v. *Ellis Granite Co.*, 86 Vt. 282.) In other jurisdictions they have been held void on the ground that the voting power is inherently attached to and inseparable from the real ownership of each share and can only be delegated by proxy with power of revocation; that all agreements and devices by which stockholders surrender their voting powers are invalid as against a sound public policy. (*Bostwick* v. *Chapman*, 60 Conn. 553; *Harvey* v. *Linville Imp. Co.*, 118 N. C. 693.

See Cushing on " Voting Trusts;" Wormser on " The Disregard of the Corporate Fiction," p. 142, Smith on " The Validity of Voting Trusts," 22 Col. Law Review, 627.)

In New York voting trusts do not stand or fall on common-law theories of public policy. They are recognized and regulated by statute. Whether they would be valid at common law in the absence of a statute defining and regulating them is immaterial. Public policy in regard thereto is defined by the Legislature. Between the conflicting rules of the common law, a choice has been made. No voting trust not within the terms of the statute is legal and any such trust, so long as its purpose is legitimate, coming within its terms is legal. The test of validity is the rule of the statute. When the field was entered by the Legislature it was fully occupied and no place was left for other voting trusts.

Section 50 of the Stock Corporation Law (Cons. Laws, ch. 59), prior to the amendment of 1925 (L. 1925, ch. 120), read as follows:

" Voting trust agreements. A stockholder, by agreement in writing, may transfer his stock to a voting trustee or trustees for the purpose of conferring the right to vote thereon for a period not exceeding ten years upon the terms and conditions therein stated. Every other stockholder may transfer his stock to the same trustee or trustees and thereupon shall be a party to such agreement. The certificates of stock so transferred shall be surrendered and canceled and new certificates therefor issued to such trustee or trustees in which it shall appear that they are issued pursuant to such agreement, and in the entry of such ownership in the proper books of such corporation that fact shall also be noted, and thereupon such trustee or trustees may vote upon the stock so transferred during the term of such agreement. A duplicate of every such agreement shall be filed in the office of the corporation and at all times during business hours be open to inspection by any stockholder or his attorney."

We are unable to apply any rule of statutory construction which would exclude banking corporations from the operation of the section. Banking Law (Cons. Laws, ch. 2, § 120) provides: " The rights, powers and duties of stockholders of banks shall be as prescribed in the general corporation law and the stock corporation law." One of the rights and powers of a stockholder in a bank was the right and power to transfer his stock to a voting trustee or trustees for the purpose of conveying the right to vote thereon for a period of not exceeding ten years. One of the rights and powers of every other stockholder was the right and power to become a party to any such agreement.

Voting trusts are, therefore, legal in New York only when organized and existing under the statute for proper ends. Whatever the rule of the common law may have been, when the Legislature, the source of corporate power and authority, acts, voting trusts become legal when organized in conformity with the statute and not otherwise. No stock corporations were excepted prior to the amendment of 1925. Public policy, although an aid to the interpretation of ambiguous statutes, is powerless to create an exception when the language is plain and all-comprehensive. However cogent the reasons may have been for not applying the voting trust statute to banks by reason of their peculiar relations with the public, it is enough to say that the Legislature did not recognize such reasons as controlling. The trust agreement herein considered was, therefore, valid at the time it was entered into, viz., December 31, 1924.

On March 12, 1925, a new public policy was declared by the Legislature. The words " this section shall not apply to a banking corporation " were added to section 50 (L. 1925, ch. 120). The only question here presented is as to the effect of this amendment as to existing valid voting trust agreements made by the stockholders of banking corporations. The amendatory statute is not a mere repealing statute. It creates a specific exception to the

existing law. Section 93 of the General Construction Law (Cons. Laws, ch. 22) provides:

" § 93. Effect of repealing statute upon existing rights. The repeal of a statute or part thereof shall not affect or impair any act done, offense committed or right accruing, accrued or acquired, or liability, penalty, forfeiture or punishment incurred prior to the time such repeal takes effect, but the same may be enjoyed, asserted, enforced, prosecuted or inflicted, as fully and to the same extent as if such repeal had not been effected."

The general object and the context of the language used indicate that the new law operates on existing rights by direct action as well as repeal. Section 110 of the General Construction Law provides:

" § 110. Application of chapter. This chapter is applicable to every statute unless its general object, or the context of the language construed, or other provisions of law indicate that a different meaning or application was intended from that required to be given by this chapter."

It follows that no existing rights of stockholders or voting trustees are saved by force of the provisions of section 93 of the General Construction Law, relative to the effect of a repealing statute upon rights accrued prior to the repeal of a statute.

Without the application of section 50 of the Stock Corporation Law to banking corporations, the voting rights and powers of stockholders are defined by the General Corporation Law (Cons. Laws ch. 23) and the Stock Corporation Law. The statutes relative to the question must, therefore, be considered.

A corporation organized under the Banking Law may not issue non-voting shares of stock. (Stock Corporation Law, § 11.)

" Unless otherwise provided in the certificate of incorporation or other certificate filed pursuant to law, every stockholder of record of a stock corporation shall be entitled at every meeting of the corporation to one vote

for every share of stock standing in his name on the books of the corporation." (Gen. Corp. Law, § 23; Stock Corporation Law, § 47.) Stockholders may vote by proxy but every proxy of a stock corporation is revocable at the pleasure of the person executing it, and no officer, clerk, teller or bookkeeper of a corporation formed under or subject to the Banking Law shall act as proxy for any stockholder at any meeting of the corporation. (Gen. Corp. Law, § 26.)

" The stockholders of every bank shall hold an annual meeting for the election of directors on the second Tuesday in January or within ten days thereafter." (Banking Law, § 122.)

When the voting trust privilege is withdrawn from the stockholders of a banking corporation, it becomes the duty of the stockholders to hold an annual meeting at which they alone are empowered to vote, in person and by proxy, for the election of directors. After March 12, 1925, the application of section 50 in its original form ceased. No stockholder could lawfully transfer his stock to a voting trustee or trustees for the purpose of conferring the right to vote thereon, even though the voting trustees were already acting as such for any other stockholder or stockholders of the bank. He could not so transfer his stock for the reason that no legislative authority existed for such transfer. The right and power so to transfer his stock rested in the provisions of section 50, and when the section ceased to be applicable that right and power became non-existent. No legislative purpose to preserve existing trust agreements in their entirety is evidenced by the language of the statute. It took them as it found them. If it left them intact as they were, it went no further. After March 12, 1925, no statute permitted a stockholder to transfer his shares to a voting trust. The right of stockholders to transfer their shares to the voting trustees was an "inchoate personal privileges to which in a legal sense one has no indefeasible vested claim." (*Matter of Wentworth*, 230 N. Y. 176, 187.)

[247 N. Y. 290]        Opinion, per POUND, J.        [Feb.,

The effect of the amendment on the rights of trustees to vote on the stock which had been transferred to them when the amendment took effect must next be considered. One of the elements of a legal voting trust agreement is the privilege of any stockholder to become a party to such agreement. The reason is obvious. Such agreements would be contrary to a sound public policy if their purpose or result was to array voting trust stockholders against non-voting trust stockholders, so that the latter are not privileged to join forces with the former if they choose to do so. At least the Legislature has provided that it is essential to the validity of a voting trust agreement that any stockholder may become a party thereto and has thus declared the public policy which would uphold voting trusts otherwise unauthorized.

We may, for the moment, construe the statute as prospective only in effect and operation. What is the result? A principal purpose of such agreement is to obtain the control of the bank by the deposit thereunder of at least a majority of the stock of the bank, but this purpose had not yet been accomplished. When this purpose is thwarted; when a stockholder is prohibited from becoming a party to the agreement, the voting trust agreement has failed in one of its essential purposes. It is no longer an instrument of inchoate complete control. When the right of stockholders outside the charmed circle to avail themselves of its privileges ceases, its character is changed. It becomes an instrument to unite those who have availed themselves of its privileges and exclude all others instead of an instrument aiming at ultimate control of a majority of the stock. To uphold such a trust as to the stock transferred to it prior to the amendment would be to legalize in part existing voting trusts which would otherwise be illegal under the old statute and to prohibit all others. Whatever the legislative purpose may have been, it cannot have contemplated such an incongruous result. Its purpose is to be

found in its language rather than in the ideas expressed in debate by the introducer of the bill. (*Woollcott* v. *Shubert*, 217 N. Y. 212, 221, 222.) Essentially the operation of the amendment becomes retrospective. The voting trust agreement must exist in its entirety or it ceases to be valid. It cannot exist in its entirety. It is, therefore, invalid in its entirety.

Constitutional questions seem simple. The separation of the voting power from the beneficial ownership of stock of banking corporations is a matter for regulation by the police power of the State. Banking is a business affected with a public interest. (*Noble State Bank* v. *Haskell*, 219 U. S. 104.) Its nature makes it peculiarly an object of legislative solicitude in order that depositors and stockholders may be protected and proper management by those responsible therefor secured according to legislative theories of public welfare. The voting trust exists by virtue of statute and is subject to legislative approval for its continued existence. The amendment of 1925 is a declaration that the public welfare requires that stockholders in banks shall vote their own shares of stock in person or by proxy and shall no longer separate the voting power from the beneficial ownership of their shares. New York says in substance what some other States have held generally in the absence of statutory regulations, *i. e.*, that a sound public policy requires that the power to vote shares in a banking corporation shall be inseparable from the real ownership of each share and can be delegated only by proxy with power of revocation. The Legislature has decreed that it is to the public advantage to withhold from the stockholders of a banking corporation the privilege of membership in voting trusts. The purpose of the Legislature to correct an evil, real or imagined, is clearly revealed by the recommendation of the Superintendent of Banks to the Legislature. Whether voting trust agreements as applied to banks are a great evil as tending to entrench existing officers and their policies

[247 N. Y. 290]        Opinion, per POUND, J.                [Feb.,

beyond the control of the stockholders, or a great benefit as tending to stabilize sound administration, is not for us to say. It is enough that they have an evil aspect to the legislative eye. Regulatory laws, reasonable in character, designed to accomplish a legitimate public purpose, and enacted to promote the public welfare apply even to private contract rights when the public policy is appropriately declared and defined and the two conflict. (*People ex rel. Durham R. Corp.* v. *LaFetra,* 230 N. Y. 429, 448.) Moreover, as the amendment merely regulates the manner in which the stock of a banking corporation shall be voted, and does not affect the property of the corporation or its objects, it comes within the reserved power to amend corporate charters so as to regulate methods of administration and details of procedure in the interest of the public and of all concerned. (*Lord* v. *Equitable Life Assur. Society,* 194 N. Y. 212.)

Nor can it be said that the trustees have acquired any property interest under the voting trust agreement of which they are deprived by the statute. The trustees exercise certain voting powers, not for their own benefit, but for the benefit of the stockholders and the corporation. They have no beneficial interest in the stock and thus their right or interest lacks those elements of ownership which are so associated in our minds with the idea of property as to be beyond the legislative power or control. (*Metcalfe* v. *Union Trust Co.,* 181 N. Y. 39, 44.)

Whatever line of attack on legislative power is taken, the assault is turned back by numerous decisions on the subject.

The orders of the Special Term and the Appellate Division should be reversed and petitioner's motion for a new election granted, with costs in all courts and ten dollars costs of motion.

CARDOZO, Ch. J., CRANE, ANDREWS, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Ordered accordingly.