**WESTERN PAC. R. CORPORATION v. BALDWIN et al.**

No. 10669.

Circuit Court of Appeals, Eighth Circuit.

April 2, 1937.

Rehearing Denied April 27, 1937.

Frank C. Nicodemus, Jr., of New York City, for appellant.

Cassius M. Clay, Asst. Gen. Counsel, Reconstruction Finance Corporation, of Wash-

ington, D. C. (James B. Alley, Philip S. Jessup, and Florence A. de Haas, all of Washington, D. C., and Green, Henry & Remmers, of St. Louis, Mo., on the brief), for Reconstruction Finance Corporation, appellee.

Before GARDNER and SANBORN, Circuit Judges, and DONOHOE, District Judge.

SANBORN, Circuit Judge.

This is an appeal from a declaratory judgment entered by the court below in a suit ancillary to and dependent upon a proceeding in bankruptcy for reorganization of the Missouri Pacific Railroad Company. The suit was commenced under the Declaratory Judgment Act (Jud.Code § 274d, 28 U.S.C. § 400 [28 U.S.C.A. § 400]) by L. W. Baldwin and T. M. Schumacher, voting trustees, as plaintiffs, and the question presented was whether a certain voting stock trust agreement covering all of the voting stock of the Denver & Rio Grande Western Railroad Company, under which Baldwin and Schumacher are the present voting trustees, was lawfully extended for a period of ten years from December 31, 1934, or whether it terminated on that date. The court below held that the agreement expired December 31, 1934. (In this opinion the Missouri Pacific Railroad Company will be called Missouri Pacific, The Western Pacific Railroad Corporation will be called Western Pacific, and The Denver and Rio Grande Western Railroad Company will be called Denver & Rio Grande.)

Missouri Pacific and Western Pacific in 1924 each owned one-half of the entire voting stock of Denver & Rio Grande, a connecting carrier of both roads. In order to insure a neutral management of Denver & Rio Grande, all of this stock was conveyed to three trustees under a voting trust agreement dated February 1, 1924, and there was issued by the trustees to Missouri Pacific a trust certificate evidencing its ownership of its one-half of the stock placed in trust, and to Western Pacific a similar certificate evidencing its ownership of the other one-half of such stock. During all the times here material, Mr. Baldwin, the president of Missouri Pacific, and Mr. Schumacher, president of Western Pacific, were the only trustees under the trust agreement.

By the terms of the voting trust agreement, the trust was to expire December 31, 1934, unless extended in accordance with the following provision of the agreement:

"Each and every of the holders of Stock Trust Certificates, by the acceptance thereof, shall be deemed to have agreed, and the Missouri Pacific and the Western Pacific hereby agree, that if this Agreement then shall remain in force as hereinabove provided each such Certificate Holder, upon the request of either the Missouri Pacific or the Western Pacific so to do, made at any time not earlier than January 1, 1934, will join in and execute an agreement (which may be executed in counterparts) extending the term of this Agreement for another period designated in such request, but not exceeding ten years from and after December 31, 1934. * * *"

Missouri Pacific on March 31, 1933, filed in the court below a petition for reorganization under section 77 of the Bankruptcy Act as added by the Act of March 3, 1933 (47 Stat. 1474, 11 U.S.C. § 205 [11 U.S.C.A. § 205 note]). The petition was approved, and thereafter L. W. Baldwin and Guy A. Thompson were appointed trustees for Missouri Pacific and since their appointment have been acting as such trustees.

On December 31, 1934, the trust certificate issued to Missouri Pacific evidencing its rights in the stock of Denver & Rio Grande under the voting trust agreement was held by the Railroad Credit Corporation as security for a loan made to Missouri Pacific, and the trust certificate issued by the trustees of the voting trust to Western Pacific was held by the Reconstruction Finance Corporation as security for a loan made by it to a subsidiary of Western Pacific. On December 31, 1934, L. W. Baldwin, by telephone, requested T. M. Schumacher to extend the voting trust agreement for ten years. Schumacher orally agreed to such extension.

On January 10, 1935, the board of directors of Western Pacific adopted the following resolution: "Resolved, that the President of this Corporation be and he is hereby authorized and directed to take such action as may be necessary or proper in order fully to protect the obligations of this Corporation under the Stock Trust Agreement dated February 1, 1924, covering the common stock of The Denver and Rio Grande Western Railroad Company owned by this Corporation, and if so advised by counsel to execute the Extension Agreement as of December 31, 1934, in accordance with the request therefor seasonably made by the Missouri Pacific Railroad Company, and further that the President be and he hereby

is directed to take up personally or by letter with the Chairman of the Reconstruction Finance Corporation, at Washington, D. C., this Corporation's request that Reconstruction Finance Corporation withdraw its objection to such extension."

A written "motion" dated January 15, 1935, entitled in the reorganization proceedings of Missouri Pacific, informing the court that L. W. Baldwin, on behalf of the trustees of Missouri Pacific, had on December 31, 1934, duly requested an extension of the voting trust agreement, and asking for instructions from the court with respect to such extension, was prepared, signed, and verified by Mr. Baldwin and Mr. Thompson, as trustees of Missouri Pacific, but was never filed in nor presented to the court. An agreement to carry into effect the ten-year extension requested was also prepared by the trustees of Missouri Pacific, but was never presented to the court for approval, and was never executed.

On September 16, 1935, a controversy having arisen between the pledgees of the voting trust certificates, on the one side, and Western Pacific and the trustees of Missouri Pacific, on the other side, as to whether the voting trust had been extended, the voting trustees Baldwin and Schumacher commenced this suit in order to ascertain whether or not the voting trust agreement had been extended or was terminated. The voting trustees, as plaintiffs, in their petition alleged that requests for the extension of the voting trusts were made by Western Pacific and also by Baldwin on behalf of the trustees of Missouri Pacific. Missouri Pacific, Baldwin and Thompson as its trustees in the reorganization proceedings, and Western Pacific were made defendants in the suit, and in their answers (Western Pacific filed an answer nunc pro tunc after trial, upon stipulation) they admitted all of the allegations of the plaintiffs' petition. The Reconstruction Finance Corporation was granted leave to become a party defendant. In its answer it in effect denied that a request for the extension of the voting trust had been made as alleged in the plaintiffs' petition, and denied that the voting trust had been extended.

The decision of the court below may fairly be summarized as follows: Baldwin, when he telephoned Schumacher on December 31, 1934, requesting an extension of the voting trust, was acting solely as president of Missouri Pacific. The trustees of Missouri Pacific had not been authorized by

the court in charge of the reorganization proceedings to enter into any extension agreement. Baldwin, as president of Missouri Pacific, had no authority to request an extension of the voting trust agreement or to enter into any agreement for an extension, such authority having then become vested in the trustees of Missouri Pacific. Baldwin's request of Schumacher was ineffective and therefore the voting trust was not extended.

The court in its decree dismissed the plaintiffs' suit and directed them to substitute stock certificates for the voting trust certificates held by the pledgees of Missouri Pacific and Western Pacific. Western Pacific alone appealed. It procured an order of severance as to the other defendants.

The appellant argues:

(1) That an effective request or effective requests for the extension of the voting trust agreement were seasonably made by both Western Pacific and Missouri Pacific.

(2) That the pledgees of the voting trust certificates, by accepting the certificates, agreed to the extension authorized by the voting trust agreement and are in no position to question the sufficiency of the requests which the parties to the voting trust have admitted were made.

We agree with the court below that there is no merit in the second contention. The Reconstruction Finance · Corporation does not attack the validity of the voting trust agreement, but asserts that what was done by the parties to it did not extend it beyond December 31, 1934; that it expired by its terms on that date; and that the Reconstruction Finance Corporation, as a pledgee, is therefore entitled to receive, in lieu of the voting trust certificate which it holds, a stock certificate.

We are also of the opinion that the Reconstruction Finance Corporation was not precluded from questioning the alleged extension of the voting trust agreement by reason of the admissions by the other defendants that seasonable requests for its extension were made as alleged in the petition. Compare, Kneeland v. Luce, 141 U. S. 437, 12 S.Ct. 39, 35 L.Ed. 808, and Lewis v. H. J. Schwinn & Co., 130 Wash. 49, 226 P. 129. If the Reconstruction Finance Corporation is bound by the admissions of the other defendants, there is no controversy to be decided. It was the contention of the Reconstruction Finance Corporation that the voting trust was at an end, and that

272

contention brought about this suit. The Reconstruction Finance Corporation is an adversary of the plaintiffs and the other defendants.

The question at issue was to be determined not from the admissions contained in the pleadings, which were controverted by the Reconstruction Finance Corporation, but from the facts which were proved and agreed to at the trial.

█ It was stipulated that "a verbal request was made by Mr. Baldwin on December 31, 1934, when he telephoned to Mr. Schumacher and orally requested that the indenture [voting stock trust agreement] be extended for a period of ten years," and that "Mr. Schumacher agreed verbally to extend the agreement." It will be noted that there is nothing in the quoted stipulation to indicate in what capacity Mr. Baldwin acted in requesting the extension. There is nothing in the record to show that in making this request he was acting solely as the president of Missouri Pacific, unless it can be inferred from the resolution of the board of directors of Western Pacific hereinbefore quoted, which recites that a request for extension was "seasonably made by the Missouri Pacific Railroad Company." We do not think that any such inference can justifiably be drawn from that recital.

On the other hand, the record shows that Mr. White, counsel for the trustees of Missouri Pacific, was asked the following question by Mr. Green, representing the Reconstruction Finance Corporation:

"May it also be admitted that, prior to the telephone conversation which Mr. Baldwin had with Mr. Schumacher no application had been presented to Judge Faris, or to any other judge, for authority to enter into this extension agreement?"

Mr. White said: "I will state in that regard that I had prepared, subsequent to December 31, a petition for the Trustees to submit to Judge Faris, asking—

"Mr. Green: But I said prior to December 31st.

"Mr. White: There has been no application to the Court, that is true. Before that petition was presented by the Trustees and because of the objection of the R. F. C., the Trustees doubted that they would make the application. But prior to that time, both Trustees had agreed that it was to the interest of the trust estate to maintain the status quo and have the Voting Trust Agreement extended, and they had agreed to do so. * * *

"Prior to this extension, Mr. Baldwin and Mr. Thompson as a result of a conference with their staff, determined that the extension of this Voting Trust Agreement was in the interest of the creditors and stockholders of the Missouri Pacific, and for that reason Mr. Baldwin telephoned, on December 31st, to Mr. Schumacher, urging an extension of the Voting Trust Agreement, and he agreed to it. He said that the Western Pacific felt the same way about it. Then, on taking it up with Mr. Jones—

"Mr. Green: There is one *other* thing we can stipulate at this point. * * *" (Italics ours.)

Whether Mr. White's statement amounted to a stipulation of facts is not entirely clear, but, under the circumstances and in view of the context, it is difficult to hold that the statement was not agreed to by other counsel. It was not objected to by anyone, and no exception was taken to it, and there is no apparent reason for disregarding it, although the court below appears to have given it no weight in finding that Mr. Baldwin made the request for the extension of the voting trust solely in his capacity as president of Missouri Pacific and was not acting on behalf of the trustees of Missouri Pacific. We think that there is no substantial evidence to support the finding that Mr. Baldwin, in making the request for an extension, did so only in his capacity as president of Missouri Pacific. We think it must be held that he was acting on behalf of himself and Mr. Thompson as trustees for Missouri Pacific as well. As such trustees, Mr. Baldwin and Mr. Thompson were officers of the court which had appointed them and were subject to its control. Imperial Assur. Co. v. Livingston (C.C.A.8) 49 F.(2d) 745, 748, 749; In re Howard (D.C.Cal.) 130 F. 1004, affirmed (C.C.A.) 135 F. 721; 6 Am.Jur. page 591; Bankruptcy Act § 77 (11 U.S.C. § 205 [11 U.S.C.A. § 205]).

█ Had they been authorized by the court, prior to December 31, 1934, to request an extension of the voting trust, we think no one would question the sufficiency of the request made by Mr. Baldwin on December 31, 1934. Although Mr. Baldwin made the necessary request without authority of the court, we are not aware of any reason why the court, if convinced that an extension of the voting trust was for the best interests

of the estate of Missouri Pacific, might not have approved, adopted, and ratified the act of Mr. Baldwin in making the request, and have authorized the trustees of Missouri Pacific to enter into an agreement with Western Pacific extending the voting trust for ten years from December 31, 1934. On the other hand, we think the court was at liberty, if convinced that an extension of the voting trust was not for the best interests of the estate of Missouri Pacific, to disapprove or repudiate for the estate the request for an extension made by Mr. Baldwin and to deny authority for the execution of an agreement extending the term of the voting trust, in which event the voting trust would be at an end.

While this suit was tried and determined by the court of bankruptcy as a suit ancillary to and dependent upon the reorganization proceedings of Missouri Pacific, it cannot be held that the court's finding and conclusion that the trust agreement was not extended was in any way the equivalent of a disapproval or repudiation by the court of the request for an extension made by Mr. Baldwin on behalf of himself and Mr. Thompson, as trustees of Missouri Pacific. We think that the question whether the act of Mr. Baldwin in requesting an extension of the voting trust agreement shall be ratified by the court and the voting trust agreement extended is still open for determination, and that the court below, after notice to all interested parties, should determine that question, the answer to which will depend, of course, upon whether or not it is for the best interests of the trust estate, and of the creditors and stockholders interested therein, that the voting trust continue.

Our opinion is that a seasonable request for an extension made by or on behalf of the trustees of Missouri Pacific to the president of Western Pacific, if subsequently approved by the court of bankruptcy and subsequently recognized as sufficient by Western Pacific, would constitute a sufficient compliance with the requirements of the voting trust agreement necessary to be complied with in order to secure an extension of the term of the voting trust. The record does not show that Mr. Schumacher, president of Western Pacific, on December 31, 1934, or at any time prior thereto, made a request for an extension of the voting trust, and therefore the question as to his authority to act for his road in that regard is, we think, of no importance.

The Reconstruction Finance Corporation contends that, since Denver & Rio Grande is a Delaware corporation, and since the Delaware Corporation Law was amended in 1925—approximately one year after the voting trust agreement here involved was executed—so as to limit the maximum term of any voting trust agreement to ten years (34 Delaware Laws 1925, c. 112, § 6, p. 277), it must be held that no lawful extension of the voting trust agreement could be made. It is doubtful whether this issue of law was properly raised in the court below. The statute of Delaware is not mentioned in the pleadings, but the question is argued in the briefs and was called to the attention of the trial court. There is nothing in the amendatory act which specifically makes it applicable to voting trust agreements executed prior to its adoption. It is contended, however, that it must be applied to such voting trusts, since it represents a declaration of the public policy of Delaware which would modify private contract rights, previously acquired, to the extent they are in conflict with such policy. See In re Morse, 247 N.Y. 290, 160 N.E. 374.

The question is certainly not free from doubt, but a general rule of statutory construction followed by the federal courts is "that a retrospective operation will not be given to a statute which interferes with antecedent rights, or by which human action is regulated, unless such be 'the unequivocal and inflexible import of the terms, and the manifest intention of the legislature.' United States v. Heth, 3 Cranch [399] 413, 2 L.Ed. [479] 483; Reynolds v. McArthur, 2 Pet. 417, 7 L.Ed. 470; United States v. American Sugar Refining Co., 202 U.S. 563, 577, 26 S.Ct. 717, 50 L.Ed. 1149, 1152; Winfree, Adm'r v. Northern Pac. Railway Co., 227 U.S. 296, 33 S.Ct. 273, 57 L.Ed. 518." Union Pac. R. Co. v. Laramie Stock Yards Co., 231 U.S. 190, 199, 34 S.Ct. 101, 102, 58 L.Ed. 179; Gordon v. Empire Gas & Fuel Co. (C.C.A.5) 63 F.(2d) 487, 489; Jones v. Fidelity & Columbia Trust Co. (C.C.A.6) 73 F.(2d) 446, 447.

The right granted by the voting trust agreement to extend its term beyond December 31, 1934, came into existence prior to the enactment of the amendatory act. The voting trust at the time it was created was apparently lawful. Mackin v. Nicollet Hotel (C.C.A.8) 25 F.(2d) 783. No contention that it was then unlawful is made. Since the act of Delaware expressed no

intent that it should be given a retroactive effect or deprive parties to an existing voting trust agreement of rights acquired thereunder, and since our attention is called to no decision of the highest court of Delaware construing it as affecting existing voting trusts, we think the rule of construction referred to above should be applied. We therefore hold that the laws of Delaware do not preclude an extension of the voting trust agreement if such an extension shall be approved and authorized by the court below after a full hearing had upon notice to all parties concerned.

The decree appealed from is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.