AUGUSTUS J. GERTENBACH, as Successor Trustee under the Last Will and Testament of JAX LIPPMAN, Deceased, etc., Plaintiff, *v.* SIMON RODNON, DAVID RODNON, SAMUEL LIPMAN, SAMUEL BECKER and Others, Defendants.

Supreme Court, Special Term, New York County, May 4, 1939.

*Hartman, Sheridan & Tekulsky*, for the plaintiff.

*Matthew Swerling*, for the defendants.

MILLER, J. On July 10, 1929, the plaintiff's testator, who owned about forty per cent of the stock of Silver Rod Stores, hereinafter referred to as " Silver Rod," entered into a voting trust agreement with the defendants. This voting trust was in the usual form pursuant to section 50 of the Stock Corporation Law and it was carried out by the transfer of the stock owned by plaintiff's testator in exchange for voting trust certificates. The voting trustees continued to act as directors. On February 1, 1934, the defendant directors organized a subsidiary company referred to herein as the " Supply Company," consisting of 3,000 shares of common stock, 2,782 of which were issued to Silver Rod in consideration for the transfer of the bulk of the assets of Silver Rod to Supply Company. On February 8, 1934, the voting trustees voted to reduce the capital of Silver Rod from about $1,000,000 to $300,000, with the provision that the surplus be returned in whole or in part to the holders of the common stock of Silver Rod. On April 11, 1934, it was voted that the surplus, by the reduced capitalization of defendant Silver Rod, be distributed to the holders of record and that this

dividend be in the form of stock of the Supply Company. By a resolution of the board of directors, on April 11, 1934, it was resolved to transfer the 2,782 shares of the Supply Company to the defendants who were already acting as voting trustees, the transfer to be under a voting trust agreement to continue for a period of ten years, the provisions of which were to be similar to those of the agreement of July 10, 1929. The officers were directed to transfer the stock issued to the voting trustees in exchange for voting trust certificates and that voting trust certificates be issued to the common stockholders of record as of April 12, 1934, in the ratio of one voting trust certificate for each ten shares of common stock of defendant Silver Rod. The stock of the Supply Company was thereafter transferred to defendants as voting trustees and voting trust certificates were issued to the stockholders of Silver Rod.

A situation has thus been created where a stock dividend has been voted by the directors and a direction has been given to the officers to turn over the stock dividend to them as trustees under the prior voting trust agreement and receive in exchange voting trust certificates. The agreement, therefore, for a voting trust for ten years from July, 1934, was not made between the real stockholders and voting trustees but between the old trustees and themselves. Such an agreement does not constitute a voting trust agreement that is valid. Assuming that the trustees under the agreement of 1929 could legally obtain the stock dividend as the sole stockholders of record, for distribution among the beneficial owners of the stock, they could not make an agreement with themselves to retain this stock in lieu of distributing it and substitute beneficial certificates of ownership to be distributed among the stockholders. In *Matter of Morse (Bank of America)* (247 N. Y. 290, 298) the sole test of the validity of voting trust agreements is said to be founded on a statute which is now section 50 of the Stock Corporation Law. As was said in that case: " In New York voting trusts do not stand or fall on common-law theories of public policy. They are recognized and regulated by statute. Whether they would be valid at common law in the absence of a statute defining and regulating them is immaterial. Public policy in regard thereto is defined by the Legislature. Between the conflicting rules of the common law, a choice has been made. No voting trust not within the terms of the statute is legal and any such trust, so long as its purpose is legitimate, coming within its terms is legal. The test of validity is the rule of the statute. When the field was entered by the Legislature it was fully occupied and no place was left for other voting trusts."

Section 50 reads as follows: " A stockholder, by agreement in writing, may transfer his stock to a voting trustee or trustees for the purpose of conferring the right to vote thereon for a period not exceeding ten years upon the terms and conditions therein stated  *  *  *.  The certificates of stock so transferred shall be surrendered and cancelled and new certificates therefor issued to such trustee or trustees in which it shall appear that they are issued pursuant to such agreement."

The term " stockholder " as used in section 50 means an actual stockholder and not one who is holding stock by virtue of being a voting trustee.  If the ultimate or beneficial stockholders of the trust stock never received their stock dividend they could not transfer such stock dividend in exchange for voting trust certificates.  A voting trust agreement, under section 50, consequently never arose so far as the stock dividend of 1934 is concerned.  An additional vice of this alleged voting trust agreement is that it virtually extends for a period of years the term of the original voting trust without the consent of the beneficial stockholder.  Voting trustees, therefore, must, upon proof of, the facts stated in the complaint, be enjoined from exercising their rights as stockholders under that agreement.  This would not apply to the original stock held by them under the voting trust agreement of 1929.

The complaint states a sufficient cause of action to entitle plaintiff to a temporary injunction and the cross-motion to dismiss is denied.  The motion in the alternative for a severance on the ground that plaintiff has improperly joined a transfer action with a derivative stockholder's suit is also denied in view of section 258 of the Civil Practice Act (added by Laws of 1935, chap. 339). The motion to strike out paragraph 27 of the complaint is likewise denied.  Defendants may answer within ten days from the service of a copy of this order with notice of entry.