STANDARD LUMBER CO., FORMERLY PILOT ROCK LUMBER CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 77900. Filed October 31, 1960.

*William H. Kinsey, Esq.*, for the petitioner.
*Walter I. Auran, Esq.*, for the respondent.

### OPINION.

BLACK, *Judge:* Respondent has determined deficiencies in the income tax of petitioner for the years 1954 and 1955 as follows:

| Year | Deficiency |
|------|-----------|
| 1954 | $255,939.96 |
| 1955 | 180,397.47 |

All issues relating to the taxable year 1955 have been settled in the stipulation filed by the parties. Respondent conceded that petitioner was entitled to file a consolidated income tax return with Oregon Fibre Products, Inc., hereinafter referred to as Products, for the year 1955. Petitioner conceded that Products was not entitled to a deduction of $50,000 on amortization of masonite. Effect will be given to this agreement under Rule 50.

Two issues as to the year 1954 are presented:

1. Whether petitioner owned directly stock of Products possessing at least 80 per cent of the voting power so as to entitle the two corporations to file a consolidated income tax return under the provisions of section 1504 (a) (2) of the Internal Revenue Code of 1954.

2. Whether, if it be determined that the corporations were not entitled to file a consolidated return, interest in the amount of $92,015 on debentures of Products held by petitioner constituted accrued income taxable to petitioner.

The facts, all of which are stipulated, are included herein by this reference and may be summarized as follows:

Petitioner, formerly Pilot Rock Lumber Co., is a dissolved and liquidated corporation which was organized under the laws of the State of Oregon and had its principal office at Pilot Rock, Oregon. Liquidation of petitioner was completed on June 30, 1956. Products was incorporated under the laws of the State of Oregon, likewise having its principal office at Pilot Rock. Petitioner and Products

maintained their books and reported income on an accrual method of accounting by calendar years, and timely filed a consolidated income tax return for 1954 with the district director of internal revenue, Portland, Oregon.

During 1954, Products had two classes of authorized stock, common and preferred. The preferred stock did not possess voting rights and was limited and preferred as to dividends. During the same year, petitioner held approximately 62 per cent of Products' outstanding common stock, trustees under a voting trust agreement held approximately 25 per cent, and all others held approximately 13 per cent.

The voting trust agreement under which the trustees held approximately 25 per cent of stock of Products outstanding during 1954 was created on November 3, 1952, and terminated by consent of all parties thereto by an agreement dated January 1, 1955. The voting trust agreement empowered the trustees to vote all the shares of Products held under the agreement. It further provided that the trust agreement should continue for 20 years from its date.

Section 57.175 of the Oregon Revised Statutes, a part of the Oregon Business Corporation Act which was passed during the 1953 session of the Oregon Legislature and became effective December 31, 1953, provides that a voting trust can be created for a period not to exceed 10 years.

On or about January 1, 1952, Products issued $2,500,000 of 5 per cent sinking fund debentures. Petitioner purchased and held $1,840,000 of these debentures. The debentures read, in material part, as follows:

OREGON FIBRE PRODUCTS, INC. * * * promises to pay * * * on January 1, 1968 * * * the principal sum * * * and to pay interest thereon at the rate of five percent (5%) per annum * * * semi-annually on the 1st day of July and the 1st day of January in each year, until payment of said principal sum has been made or duly provided for, subject to the limitation set forth in the next paragraph in regard to the postponement of interest payments. * * *

Interest shall accrue on this Debenture from the applicable date specified in the preceding paragraph, but payment of such interest may be postponed by the Company in the event, to the extent and during the period that payment of interest on the Debentures is prevented by the terms or operation of any loan, or any modification thereof, senior to the Debentures obtained by the Company (either before or after the date of the Indenture) from the Reconstruction Finance Corporation or from any other lender, public or private, for the purpose of financing the construction program under which the Company built and equipped or will build and equip its fibreboard plant. Such postponement of interest payments shall not constitute an Event of Default as defined in the Indenture unless and until the Company does not pay such postponed interest on or before the third interest payment date following the date of the termination of any obstacle to the payment of such interest created by any such loan senior to the Debentures, but such postponed interest shall be paid in any event on or before January 1, 1958, and failure to pay such postponed interest, if

any, on or before January 1, 1958, constitutes an Event of Default. Accrued interest, the payment of which is postponed in accordance with the foregoing, shall not be due within the meaning of any of the provisions of this Debenture or the Indenture until such time as the postponement of such interest constitutes an Event of Default.

On or about December 31, 1953, petitioner executed a "consent" with regard to the debentures of Products which read, in material part, as follows:

The undersigned holder * * * of Oregon Fibre Products, Inc. Debentures * * * hereby consents to the execution of a Supplemental Indenture containing the provisions set forth below. * * *

(a) Notwithstanding any other provisions of this Indenture, including but not limited to the Events of Default and other provisions contained in Article Six of the Indenture, no principal or interest shall become due and payable upon the Consenting Debenture until the R.F.C. Loan has been fully paid. Until such time the Trustee shall take no action under the Indenture with respect to declaring the principal of any of the Consenting Debentures due and payable, or any other action which might otherwise be taken with respect to the preservation or protection of the rights of the Consenting Debentures. Any interest, the payment of which is postponed under the preceding sentence, shall be paid on or before the third interest payment date following the date upon which the R.F.C. Loan is fully paid, and failure to pay such postponed interest on or before such third interest payment date shall constitute an Event of Default. For the purposes hereof the R.F.C. Loan shall have been fully paid upon the date specified in written notice of such payment delivered to the Trustee by the R.F.C. or by the substitute obligor in the event the R.F.C. Loan has been refinanced. * * *

On or about December 31, 1953, petitioners also executed a "standby agreement" with respect to debentures of Products which read, in material part, as follows:

To induce the Reconstruction Finance Corporation (herein called "RFC") to make further disbursements of all or any part of the loan (herein called "Loan"), authorized to Oregon Fibre Products, Inc., * * * Borrower, ——— (herein called "Debenture Holder") hereby represent, warrant and covenant * * * to and with each other and with the RFC with respect to the indebtedness * * * owing by Borrower to Debenture Holder * * * that:

1. Without the prior written consent of RFC, Debenture Holder will take no action to assert, collect or enforce all or any part of the Debenture.

2. Debenture Holder will promptly pay to RFC all amounts which may be received by Holder on account of the Debenture.

*     *     *     *     *     *     *

4. Debenture Holder will deliver to the Trustee under the Debentures or to Borrower and the Trustee or the Borrower will stamp or otherwise mark each Debenture with a legend as follows:

This Debenture and all rights represented thereby are subject to all the terms and conditions of a certain Standby Agreement made by and between the Debenture Holder and the RFC * * * which Standby Agreement provides, among other things, that the Company shall not pay any interest or principal on this Debenture Bond until payment in full of the RFC Loan in the amount of $3,100,000.00 together with interest has been made * * *

*     *     *     *     *     *     *

7. This Standby Agreement and all obligations hereunder or with respect hereto, of Borrower and Debenture Holder, shall continue in full force and effect until payment in full of the indebtedness evidenced by the Note, notwithstanding any action which RFC or Borrower, or others, with the consent of RFC may take or refrain from taking with respect to such indebtedness. * * *

On or about January 7, 1954, the legend specified in the standby agreement was stamped on all of the debentures which petitioner held.

Products made no payments of interest to consenting debenture holders, including petitioner, during any of the periods here in question. In the Federal income tax return filed by petitioner for the calendar year 1954, interest on the debentures of Products was included in the amount of $92,015.

The first issue presented is whether petitioner and Products were entitled to file a consolidated return for the year 1954 under the provisions of section 1504 (a) (2) of the 1954 Code.[1] Petitioner concedes that if all of the 120,000 outstanding shares of Products' common stock are counted, its 74,000 shares constitute a holding insufficient to qualify for the privilege of filing a consolidated return. It insists, however, that the voting rights of 30,000 shares under the voting trust agreement were suspended by operation of the Oregon Business Corporation Act during 1954, and that, therefore, its 74,000 shares possessed not 62 but 82 per cent of the voting power of all classes of stock. Respondent contends that no suspension of the voting rights of the stock held under the voting trust was worked by enactment of the Oregon Business Corporation Act, and that, therefore, petitioner did not own stock in Products possessing 80 per cent of the voting power during the taxable year 1954.

Prior to the enactment of the Oregon Business Corporation Act, the validity of voting trusts had been recognized by the courts of that State. *Curtze* v. *Iron Dyke Copper Min. Co.*, 81 Pac. 815. See also *In re Pittock's Will*, 199 Pac. 633; *Smith* v. *Bramwell*, 31 P. 2d 647. The trust agreement was entered into on November 3, 1952. By its terms the voting trust was to continue for a period of 20 years. It is not contended nor do we find any warrant for holding that the agreement was not valid when executed.

In 1953, the Oregon Legislature enacted a Business Corporation Act which provided that voting trusts might be created "for a period of not to exceed 10 years." Petitioner contends that the enactment

---

[1] SEC. 1504. DEFINITIONS.

(a) DEFINITION OF "AFFILIATED GROUP."—As used in this chapter, the term "affiliated group" means one or more chains of includible corporations connected through stock ownership with a common parent corporation which is an includible corporation if—

* * * * * * *

(2) The common parent corporation owns directly stock possessing at least 80 percent of the voting power of all classes of stock and at least 80 percent of each class of the nonvoting stock of at least one of the other includible corporations.

As used in this subsection, the term "stock" does not include nonvoting stock which is limited and preferred as to dividends.

cast "[a] definite pall of invalidity" upon the voting trust. Its position is stated in its brief, thus:

Pending judicial clarification of the impact of this statutory provision upon a pre-existing voting trust, the voting trustees could not validly exercise their voting rights under the voting trust. Neither could the voting trust certificate holders exercise same until the stock was issued in their names. In the absence of a judicial determination, the matter could be resolved only through a *mutual* termination of the voting trust agreement. * * *

We do not agree that the voting trustees could not exercise their voting rights. The rights and liability of the parties under the voting trust agreement attached prior to the enactment. For the Oregon Business Corporation Act to invalidate the trust or suspend any rights accruing thereunder would require the retrospective application of the Act. As was set forth in *Hartley* v. *Utah Const. Co.*, 106 F. 2d 953, 955:

The rule in Oregon is:
"* * * no act will be held to have a retrospective effect, unless the intention in that respect is clearly apparent in the statute itself. On the contrary, if it is fairly possible to restrain the operation of the statute so as to be prospective, that course will be adopted by the courts. * * *" Libby v. Southern Pac. Co., 109 Or. 449, 452, 219 P. 604, 605, 220 P. 1017.

See also *Hoffart* v. *Lindquist*, 189 P. 2d 592, 596, in which it is stated that "[i]t is well settled that legislation is usually construed as prospective and not retrospective." We are not directed to, nor do we find, any provision of the Act which would indicate that the Oregon Legislature intended retrospective application of the Act. Indeed, section 57.799 of the Act, by providing that no right, liability, or penalty created under the prior Act should be affected by its repeal, indicates that the legislature intended only prospective operation of the act.

Both parties have discussed cases arising in jurisdictions other than Oregon to buttress their contentions. At least one case, *Christopher* v. *Richardson*, 394 Pa. 425, 147 A. 2d 375 (1959), cited by petitioner is wholly inapplicable in that it involves a voting trust created after passage of the Act restricting the duration of such trusts. More appropriate to the present issue are *Wolf* v. *Roosevelt*, 290 N. Y. 400, 49 N.E. 2d 502, and *Western Pac. R. Corporation* v. *Baldwin*, 89 F. 2d 269, in both of which cases it was concluded that Acts limiting the duration of voting trusts were not to be applied to preexisting trust agreements in jurisdictions recognizing the validity of such trusts at their creation.

We are satisfied that the voting trust in the present case was not invalidated by enactment of section 57.175 of the Oregon Business Corporation Act, and that there was no concomitant suspension of the voting rights of the 30,000 shares so held in trust. We hold, there-

fore, that during 1954, petitioner did not own stock in Products possessing 80 per cent of the voting powers so as to entitle it to file a consolidated return with Products.

The second issue presented is whether interest, in the amount of $92,015, on debentures issued by Products and held by petitioner is properly includible in petitioner's income for the year 1954. Petitioner accrued the interest on its books for 1954 and prior years, but contends that such accrual was erroneous for 1954 in that payment of the interest was contingent upon payment of the RFC loan. Petitioner relies solely on the contingency which it claims arises from the modification of the trust indenture, debentures, and the standby agreement with the RFC and Products. Respondent maintains that petitioner in 1954 had a fixed and unconditional right to the interest although payment of the interest was postponed.

In *San Francisco Stevedoring Co.*, 8 T.C. 222, 225, we set forth the principles of law applicable to a determination of the proper accrual of income as follows:

A taxpayer, using an accrual method of accounting, must accrue an item in the year in which the taxpayer acquires a fixed and unconditional right to receive the amount, even though actual payment is to be deferred. There must be no contingency or unreasonable uncertainty qualifying the payment or receipt. Income does not accrue to a taxpayer using an accrual method until there arises in him a fixed or unconditional right to receive it. * * *

The debentures as issued provided for postponement of interest payments in favor of the RFC loan, but the payments were required to be made no later than January 1, 1958. The debentures were, thus, similar to those involved in *Natco Corporation* v. *United States*, 240 F. 2d 398, a case cited on brief by both parties. Were we presented with an issue involving only the debentures as originally issued, we should have no difficulty sustaining respondent's determination. The situation would be substantially the same as it was in the *Natco Corporation* case.

Petitioner, however, consented to an amendment of the trust indenture, entered into a standby agreement with Products and the RFC, and suffered the alteration of the debentures in accordance with the agreement and consent. By the consent and standby agreement, petitioner relinquished its right to receive payment of principal or interest on the bonds until the RFC loan was fully paid, renounced its right to assert claims under or enforce the debentures, and agreed to pay over to the RFC any sums received under the debentures. Thus, petitioner's right to receive payment of interest on the debentures was dependent upon full payment by Products of the principal and interest of the RFC loan. If an item is to accrue as income, "[t]here must be no contingency * * * qualifying the payment or receipt." *San Francisco Stevedoring Co.*, cited and quoted *supra*.

We hold, therefore, that a contingency so qualified petitioner's right to receipt of the interest here in issue as to render it not properly includible in petitioner's income for the year 1954.

*Decision will be entered under Rule 50.*