In the Matter of the Application of BRENTMORE ESTATES, INC., Respondent, Appellant, for an Order for the Inspection of the Books of HOTEL BARBIZON, INC., and of the Books of WILLIAM J. KENNELLY and Others, Voting Trustees of HOTEL BARBIZON, INC., against HOTEL BARBIZON, INC., and WILLIAM J. KENNELLY, ROBERT S. BYFIELD and GEORGE A. LOEB, as Voting Trustees, Appellants, Respondents, and Others.*

First Department, February 27, 1942.

*Modfg. and affg. 177 Misc. 11.

*Sidney Harris* of counsel [*Charles L. Sylvester* and *Sidney G. Kingsley* with him on the brief; *Sylvester & Harris*, attorneys], for the respondent-appellant.

*Arthur C. Parker* of counsel [*Monroe Goldwater* with him on the brief; *Goldwater & Flynn*, attorneys], for the appellants-respondents.

CALLAHAN, J.  The petition alleged that defendants Kennelly, Byfield and Loeb, together with two others not served, were the voting trustees under a certain voting trust agreement, and that the same persons constituted the board of directors of the corporate defendant.  It alleged that all of these persons, except Loeb, were officers of the corporation.  It prayed that the voting trustees and the corporate defendant be directed to permit petitioner an inspection of the names and addresses of the certificate holders. It also prayed that the corporate defendant and its officers and the voting trustees be directed to furnish the names and addresses of the voting trust certificate holders of the corporate defendant. It does not appear that the defendants Kennelly, Byfield or Loeb were proceeded against individually.

Prior to the return of the petition, the corporate defendant and defendants Kennelly, Byfield and Loeb, as voting trustees, moved by separate notices of cross-motion to dismiss the petition as insufficient on its face and for lack of jurisdiction of the court over the subject-matter.  They each asked that they be permitted to answer in the event of the denial of their cross-motions to dismiss. However, instead of confining themselves on the argument of the cross-motion to the insufficiency of the petition, the moving defend-

ants called attention to certain provisions in the voting trust agreement which they claimed relieved the trustees of the necessity of furnishing the list demanded.

Special Term overruled the cross-motion and granted petitioner's motion for the inspection. In doing so it decided the merits of the controversy with respect to the effect of the voting trust agreement without giving defendants an opportunity to answer.

We find the refusal of leave to answer unwarranted in the present circumstances. Assuming that section 1293 of the Civil Practice Act affords Special Term the right, in denying a motion to dismiss a petition, to refuse permission to answer on the merits, such refusal should only take place when it is clear that no issue exists which may be raised by answer concerning the merits of the petitioner's application. Here no such situation existed. The moving defendants asserted several legal grounds for dismissing the petition, and then referred in their briefs to a provision in the voting trust agreement. Whether this reference was for the purpose of supporting their request for leave to answer by showing that there was some defense on the merits, or was an attempt to anticipate such a defense, is immaterial. Sufficient appeared to show that an issue existed as to the effect of the agreement on the rights of the parties. The merits of that issue could not be determined on a motion to dismiss the petition, because the agreement was not a part of the petition. In fact it was no part of the papers before the court. As the matter now stands, we have no means of reviewing the correctness of Special Term's decision concerning the effect of the agreement, for the document is not a part of the papers on appeal before us. Therefore, we are required, in any event, to reverse the order in so far as it denied defendants' alternative relief of leave to answer.

There remain the legal questions raised by defendants concerning the sufficiency of the petition itself. These legal grounds may be stated, generally, as follows: (1) That petitioner, as holder of a voting trust certificate, is not entitled to the inspection ordinarily granted to a stockholder of a corporation; and (2) that petitioner, as a certificate holder, may not proceed under article 78 of the Civil Practice Act to obtain inspection of the trustees' records setting forth the information concerning fellow certificate holders, nor against the corporation to obtain like information.

In attempting to determine the rights of the petitioner as a holder of a voting trust certificate, and the extent, if any, to which such holder might, as beneficial owner, be entitled to the rights ordinarily afforded a stockholder, we immediately realize that the answer to the problem must largely depend on the provisions of the voting trust agreement.

Petitioner contends, however, that the objects for which a voting trust agreement may be executed in this State are specified by statute (Stock Corp. Law, § 50). It contends, that as our Legislature has spoken on the subject, a public policy has been created in this State which authorizes assignment of stock under a voting trust agreement solely for the purposes of conferring the right to vote thereunder, and that for this reason the holders of the voting trust certificates, as beneficial owners of the stock, are stockholders with respect to all powers incidental to ownership, other than the right to vote the stock. We cannot agree with the conclusions drawn by the petitioner in this regard. While, no doubt, the Legislature defines the public policy of the State, it does not follow that we must infer a legislative intent to restrict other common-law rights concerning alienation of property because of the limitation of one specified right.

Prior to the adoption of section 50 of the Stock Corporation Law, a doubt may have existed as to the right to separate the voting power from the beneficial ownership of stock. By section 50 of the Stock Corporation Law this State expressly permitted such separation. The public policy of New York was thereby declared on the subject. As was stated in *Matter of Morse* (*Bank of America*) (247 N. Y. 290, 298), " No voting trust not within the terms of the statute is legal and any such trust, so long as its purpose is legitimate, coming within its terms is legal. The test of validity is the rule of the statute. When the field was entered by the Legislature it was fully occupied and no place was left for other voting trusts."

Undoubtedly a stockholder who deposits his stock under a voting trust agreement parts with the right to vote, but retains the beneficial ownership of the stock. Thereafter neither the holders of the voting trust certificates nor the trustees possess all the rights of stockholders. Each group are stockholders for some purpose; neither group for all purposes. (*Matter of Bacon* [*Susquehanna Silk Mills*], 287 N. Y. 1.)

By these holdings, however, the courts did not anywise limit the right of contract of a stockholder with respect to the alienation of his remaining beneficial rights, provided his agreements did not conflict with the public policy as expressed by the Legislature. Here that policy had been expressed solely concerning the separation of the right to vote from the ownership of the stock. The adoption of the statute (Stock Corp. Law, § 50) did not require that every element of beneficial ownership, other than the right to vote, must remain in the stockholder. That the extent to which the remaining beneficial interests might be alienated was still a matter of contract is indicated by the decision in *Matter of Bacon* (*Susquehanna Silk Mills*) (*supra*). There the court considered the terms of

a voting trust agreement in order to ascertain whether the right to sell all of the corporate property and thus destroy the corporation, was in the voting trustees or in the beneficial owners of the stock. The holding of the decision was that broad language concerning the powers of the trustee was not to be construed as a consent to the destruction of the business of the company issuing the stock deposited.

Being a matter of agreement, the extent of alienation of legal title and of other property rights could be controlled by any appropriate and reasonable provision which the parties cared to make which did not bring the object of the agreement in conflict with the limitations of the statute. Accordingly the nature and extent of the rights which the beneficial owner reserved can only be ascertained by reference to the trust agreement itself, considering the same in the light of the limitations of the statute.

The present proceeding, although brought under article 78 of the Civil Practice Act, is one of the nature of the former writ of mandamus. Relief of this sort is not usually allowed, except to enforce a clear legal right. (*Matter of Coombs* v. *Edwards*, 280 N. Y. 361.) In order, therefore, to determine whether petitioner may bring a proceeding under article 78, we are required to determine whether it seeks to enforce a legal, or merely an equitable right.

The right of a stockholder to obtain inspection of corporate books and records flows from two sources — those granted him by statute, and those existing at common law.

Under section 10 of the Stock Corporation Law, a stockholder has a statutory right to inspect the stock books of his company, subject to the limitations specified in the section. Examination of the provisions of this statute show that, in order to obtain the inspection therein referred to, the applicant must appear on the books of the company as a stockholder. It appears to be conceded here that the petitioner was not a stockholder of record on the books of the company, for the stock is recorded in the names of the voting trustees. In addition, the statutory remedy of inspection is permitted against a corporation and its officers. Voting trustees are not corporate officers or agents. Their rights and liabilities, generally speaking, are created by contract. Mandamus is not to be used to enforce mere contract rights. (*Matter of Newman* v. *Smith*, 263 App. Div. 85.)

For the reasons above indicated, petitioner may not prevail in this proceeding on the basis of any rights granted it by section 10 of the Stock Corporation Law.

But, as stated, in addition to the statutory rights, a stockholder has a common-law right to inspect all corporate records and books of account. Enforcement of this common-law right rests, however, in the discretion of the Supreme Court, being exercised by the court in aid of its general visitorial powers over corporate creatures. This common-law right of inspection is a right flowing from legal ownership of the stock, and is enforcible by mandamus. (*Matter of Steinway*, 159 N. Y. 250.) Therefore, the common-law rights of petitioner would also depend largely on the extent to which it has reserved legal, as distinguished from equitable, rights in the stock beneficially held. While possession of an equitable interest might support an action in equity by such a beneficial owner (*Kittinger v. Churchill Evangelistic Association, Inc.*, 239 App. Div. 253), it might be insufficient to afford a right to proceed under article 78 of the Civil Practice Act.

It would be idle for us to attempt to discuss in the abstract what legal rights may remain in a stockholder who has become a party to a voting trust agreement. As we have already stated, the provisions of the agreement would control within the limitations above pointed out, or in any event they might affect the exercise of the court's discretion. We cannot assume, on the one hand, that petitioner retains only equitable interests in the stock delivered to the trustees, nor may we assume, on the other, that the trustees have incurred no legal liability to respond to petitioner's application for inspection. The agreement of the parties might provide to the contrary. Therefore, it does not appear on the face of the petition that under no circumstances may petitioner have the relief sought therein. And we are required to hold that the motions to dismiss the petition on its face were properly denied.

On defendants' appeal, the order appealed from should be modified by denying the motions to dismiss, with leave to defendants-appellants to answer within ten days after entry of order, and as so modified affirmed, without costs.

The petitioner's appeal should be dismissed.

MARTIN, P. J., GLENNON, UNTERMYER and DORE, JJ., concur.

Order appealed from by the defendants-appellants unanimously modified by denying the motions to dismiss, with leave to the defendants-appellants to answer within ten days after service of order with notice of entry thereof, and as so modified affirmed, without costs. Appeal from said order by the petitioner dismissed.