In the Matter of the Application of CHARLES ALLEN, JR., and Others, General Partners, and RITA ALLEN, Special Partner, Doing Business under the Firm Name and Style of ALLEN & COMPANY, and DAVID M. PALLEY, Petitioners, for an Order for the Inspection of a List of the Holders of Voting Trust Certificates of WICKWIRE SPENCER STEEL COMPANY, against THE CHASE NATIONAL BANK OF THE CITY OF NEW YORK, as Transfer Agent for the Voting Trustees of the Common Stock of WICKWIRE SPENCER STEEL COMPANY, GEORGE W. TREAT, GEORGE C. LEE, ARTHUR H. LOCKETT and JOHN H. FAHEY, Individually and as Voting Trustees of Such Stock, and WICKWIRE SPENCER STEEL COMPANY, Respondents.*

Supreme Court, Special Term, Bronx County, April 23, 1942.

* Affd., 264 App. Div. 764; motion for leave to appeal denied, 288 N. Y. 738.

*Jacob L. Holtzmann,* for the petitioners.

*Larkin, Rathbone & Perry* [*Henry E. Kelley* and *Francis S. Bensel* of counsel], for the respondents.

McGEEHAN, J. Allen & Company instituted this special proceeding to compel an inspection of the list of voting trust certificate holders of Wickwire Spencer Steel Company (hereinafter referred to as " Wickwire "). David M. Palley brought a proceeding for similar relief and upon consent of all parties the two proceedings were consolidated. In 1937 Wickwire emerged from a reorganization proceeding in the United States District Court for the Western District of New York, under a plan which, among other things, required that the stock of the company be turned over to voting trustees. This was made necessary because of a condition imposed by the Reconstruction Finance Corporation for the making of a loan to provide the necessary working capital. The four individual respondents, together with one Flershem, who has since resigned, were appointed voting trustees. Under the terms of the voting trust agreement the trust was to terminate on March 1, 1942. Provision, however, was made for the continuance of the term beyond that date in the event only that the company should subsequently thereto be indebted to the R. F. C. All of the outstanding stock, consisting of 459,319.4 shares, was issued in the name of the trustees who in turn issued their certificates to the beneficial owners of the stock.

Wickwire is a Delaware corporation. It has qualified, however, to do business in this State; its principal and executive offices are located in the city of New York, and it is alleged that its principal business operations are conducted here and that the greater part of its property is likewise located here. The voting trust was executed within the State of New York and the Chase National Bank of the City of New York is the transfer agent of the voting trust certificates. As such agent the bank maintains at its office a book containing a list of the holders of the voting trust certificates. The petitioners demanded an inspection of such book and upon the transfer agent's refusal, brought this proceeding to enforce same.

Allen & Company has been a certificate holder of record continuously since 1937, and presently is the beneficial owner of more than 5,000 shares. Palley has likewise been a stockholder of record since that time and together with his wife owns certificates for 1,160 shares. The petitioners base their respective applications on the provisions of section 115 of the Stock Corporation Law. That section was added by chapter 121 of the Laws of 1942 and

became effective on March 17, 1942. Subdivision 1 of that section requires voting trustees appointed pursuant to a voting trust agreement vesting in them the right to vote the stock of a foreign corporation (other than a moneyed or railroad corporation), having an office for the transaction of business in this State, and who shall have issued voting trust certificates to the beneficial owners of the stock, and who shall have designated a bank or trust company within the State to act as the transfer agent of such certificates, to maintain in the office of such agent a book containing the names, alphabetically arranged, of the holders of all voting trust certificates, showing their places of residence, the number of certificates held by them and when they became owners thereof. Such book is required to be kept open for at least three hours during each business day for inspection by any voting trust certificate holder of record who has held same for at least six months or by any person who is the holder of at least five per cent of the outstanding certificates. Excluded from that privilege are individuals who desire a list for the purposes of communicating with the certificate holders in the interest of a business or object other than the business of the corporation and such individuals as within five years shall have sold or offered for sale any list of stock of certificate holders. The petitioners have shown that they do not come within the prohibited class.

Subdivision 2 affords a summary proceeding for the enforcement of the rights of inspection granted by subdivision 1. It provides that upon refusal to permit the inspection, a voting trust certificate holder may apply to the Supreme Court for an order to show cause why an order should not be made permitting such inspection. Upon the return day the court is required to hear the parties summarily by affidavit or otherwise and if it shall appear to the court that the applicant is a voting trust certificate holder, qualified under the provisions of the section to demand an inspection, the court shall make an order compelling such inspection and is empowered to make such further order and direction as shall to the court seem just and proper.

The scope of the judicial inquiry is thus fixed by the statute. If it shall appear that the petitioner is a certificate holder qualified under this section, then " the court shall make an order compelling such inspection and make such further order and direction as shall to the court seem just and proper." It is not disputed that each of the petitioners has the legal qualifications to demand an inspection of the records in question and the incidental right to make extracts therefrom.

The petitioners, while asserting their statutory rights to an inspection, set forth in their respective petitions the reasons for invoking the provisions of this section for the enforcement of such rights. In the petition and in the replying affidavit Allen goes to considerable length in setting forth the reason for desiring the list. The court is satisfied that Allen is acting in good faith· in seeking this inspection and that the matters referred to by him are proper subjects for consideration at a meeting of certificate holders which he proposes to call.

The trustees oppose the application of Allen on two grounds: *First*, that an order denying a prior application for the list is *res judicata* and, *second*, that the recent legislation does not apply to voting trusts that were created prior to its enactment. The court finds no basis for either of the objections raised.

The prior application of Allen denied by Special Term in the exercise of discretion and affirmed by the Appellate Division (263 App. Div. 855), was in a proceeding instituted by Allen & Company under article 78 of the Civil Practice Act in which they sought an order in the nature of a mandamus. As a mere certificate holder, the petitioner there did not have such right of inspection as was recognized by section 10 of the Stock Corporation Law, in the case of stockholders of domestic corporations, and by the corresponding section 113, relating to stockholders of foreign corporations. Such was the clear ruling in *Matter of Brentmore Estates, Inc.*, v. *Hotel Barbizon* (263 App. Div. 389). In the proceedings at bar we are dealing with a clear statutory right that was created since the decision on the prior application. The issue in this proceeding is different. (See *Matter of Kahn* [*National City Bank*], 284 N. Y. 515.)

Then again consideration must be given to the fact that the right to an inspection is a continuing one and that each application must be considered in the light of circumstances then existing. When Allen's prior petition was before the court, the respondents were serving as trustees under a trust which could not in any event terminate before the ensuing March first. The respondents were then immune to any successful challenge of their right to act as trustees. There was then present the possibility of the trust's terminating on March 1, 1942, the date fixed for that purpose in the trust agreement itself. Now that date has passed, and the petitioners claim that the trust has been improperly prolonged. The petitioners desire a meeting of the certificate holders so that they may consider matters of common interest to them, and one of those is the termination of the trust and the restoration to them of the voting rights of the stock of which they are the beneficial owners.

Certain facts are before the court now which were not before it when the prior application was heard. Since that time the annual report of Wickwire as of December 31, 1941, has been issued. It shows that on that day the company owed to the R. F. C. $1,515,851.89, and had $2,975,192.12 cash on hand. It likewise shows current assets of $9,025,648.64 against current liabilities, exclusive of the R. F. C. loan, of only $1,602,360.64. It appears that the cash on hand as of March 1, 1942, was increased to $3,200,000. If the R. F. C. loan were paid it would terminate the trust. While the court does not now pass upon the motives of the company management in not liquidating the R. F. C. loan, or the advisability thereof, it seems nevertheless to be a fair matter for inquiry by the voting trust certificate holders, and that a meeting for that purpose would be proper. That such a meeting is desired by many certificate holders is shown by what transpired at the annual meeting. The court will not assume that the trustees will disregard or fail to give due consideration to any expressed desires of their *cestuis que trust.* The plea of *res judicata* as against Allen & Company must, therefore, be overruled.

No such plea is made against the petitioner Palley, as no prior application for inspection was made by him.

As the statute merely affords a remedy and provides a procedure for its enforcement, it applies to voting trust agreements existing on the date of its enactment as well as to those thereafter entered into. (*Laird* v. *Carton,* 196 N. Y. 169; *Brearley School* v. *Ward,* 201 id. 358.)

The case of *Wolf* v. *Roosevelt* (178 Misc. 656), is not analogous here. The statute under consideration there (Real Prop. Law, § 130-c, subd. 2) was necessarily prospective in its nature, for as a condition precedent to the validity of any trust created thereunder it required prior approval by the court. A reading of that section compels the construction applied by Mr. Justice Steuer that it was necessarily limited to voting trusts thereafter created.

The voting trust agreement is of aid in determining whether the statute in question is applicable to it. Paragraph twentieth thereof deals with the right of certificate holders to a list of the voting trust certificate holders and limits such right to the prior written consent of the voting trustees. However, the sentence containing such limitation is prefaced with the words, " Except to the extent if any required by law, * * *." Thus the agreement itself recognizes the eventuality of subsequent legislation dealing with such right and makes the limitation thereof subject to any statutes thereafter enacted.

While the applications of Allen & Company and Palley are consolidated, each asks for the list. The court in granting the inspection may under the statute make such order with regard thereto as to it may seem fair. Mr. Brower, the president of the company, expresses the fear that the circulation of letters to the certificate holders might impair the company's interests. Nothing herein has been shown as the basis for such fear. However, Allen & Company offer that their right to inspection be subject to such restrictions as may be imposed by the court, and in this offer Palley joins. The court will, therefore, grant the relief prayed for upon the following conditions: That the petitioners be given the right to inspect the list; that the actual list of certificate holders be deposited with a referee to be appointed by the court; that no communication be sent to the certificate holders unless it shall first be approved by the referee; that any documents which certificate holders are requested to sign, including any power or proxy to act for them at any meeting or otherwise, be likewise subject to the prior approval of the referee, and that the referee take such action and have such duties and powers as shall be embodied in the order appointing him.

Settle order.