In the Matter of NANCY DAVIDS et al., Petitioners, against LUISE M. SILLCOX, as Executive Secretary of the Authors' Guild of the Authors' League of America, Inc., et al., Respondents.

Supreme Court, Special Term, New York County, November 25, 1946.

*Nathan Frankel* for petitioners.

*Sidney R. Fleisher* for respondents.

SHIENTAG, J. The respondent Authors' Guild is a division of the Authors' League of America, a membership corporation. The petitioners are members. Proceeding under article 78 of the Civil Practice Act, the petitioners seek an order compelling respondents to permit them to inspect the guild's list of members and the minutes of the meetings for the preceding year of the guild's governing body.

The Authors' League of America was incorporated in 1912 " to protect the rights and property of all authors ". The membership was divided into four " Guilds ", of which respondent is one, which operate to some degree autonomously. The respondent has over two thousand members. The direction of its affairs is in the hands of a Council, which consists of thirty members elected at the respondent's annual meeting. Special meetings may be called at the direction of the council or upon the written request of fifty members.

Petitioners belong to a group of members which is dissatisfied with the conduct of the guild's affairs. Calling itself " The Committee for Action in the Authors' Guild," this group urges the adoption of a uniform author-publisher contract which would provide for the leasing rather than the outright sale of the book

and subsidiary rights, the establishment of basic minimum terms with respect to magazine articles, and the attainment of certain other objectives which the group regards as desirable. The respondent asserts that insofar as these objectives are in the interests of the membership, either they have already been attained, or efforts toward their attainment are in progress.

The application assigns as reasons for the requested relief that the petitioners wish to be informed of the activities of the council during the preceding year, and to discuss the council's actions with other members of the guild. The annual membership meeting, petitioners assert, is inadequate for this purpose, since the membership is large and geographically diffuse. They say that the information sent out by the council is incomplete; that the membership does not know who attends particular meetings of the council and who votes for and against particular proposals. They have asked the respondents for copies of the minutes and the membership list, but their request has been rejected. They assert that the usual recourse in a representative organization — the election of new officers — is denied them because of their inability to address their arguments to their unknown fellow members.

The answer of the respondents denies certain allegations of the petition, and sets up objections in point of law and certain affirmative defenses.

The first affirmative defense alleges that with respect to the petitioners' plan to set up regional chapters and to hold quarterly membership meetings, a similar proposal was transmitted to the membership, upon the petitioners' urging, and the proposal was overwhelmingly defeated. The petitioners reply that in presenting the proposal the council heavily censored the arguments in support thereof.

The second affirmative defense alleges that publicity would be ruinous to the guild's plans to improve contracts with publishers, and that a revelation to the membership of the dicussions and actions at council meetings would inevitably lead to a disclosure to publishers. At such meetings, it is stated, " charges are sometimes heard; complaints, criticisms and disclosures made; plagiarism accusations discussed; on occasion specific inquiries involving pending negotiations between authors and named publishers or others are in consideration." The petitioners reply that the alleged anxiety lest publishers receive confidential information is " strange " in view of the fact that until recently one of the members of the council was himself an editor of an important magazine. Respondents' affidavit

in rebuttal defends the integrity of this individual but does not deny his position.

The third defense alleges that the membership is kept informed of the affairs of the council, contrary to petitioners' averments, by the circulation of an " Authors' League Bulletin ". This defense also alleges that the council has taken action on the petitioners' request for a membership list and inspection of the minutes, and has determined that the granting of such requests would be detrimental to the membership. It states further: " Upon information and belief, it is and has been the established practice and policy of most organizations of professional persons, including actors, radio artists, physicians, composers and lyricists, and attorneys, not to furnish addresses of members, although in some instances lists of names are published. The addresses filed with the Guild by members are frequently with instructions that they he held in confidence and used only for official Guild purposes. Granting the petitioners access to the list of names and addresses would justify similar revelation to any other members advancing a similar request. Thus it would be manifestly impossible to keep the names and addresses of our 2150 members from falling into the hands of agencies, brokers and other groups conducting business by mail solicitation from published lists, where its use would not be germane to the affairs of the Guild." Petitioners reply that the information in the Authors' League Bulletin is inadequate; that many professional organizations have no hesitancy in disclosing their membership rolls; that publicly distributed directories list persons by occupations, and that " If any assurance were needed, petitioners would not hesitate to assure this court that they have no intention of distributing any membership list to any commercial organization for purposes not germane to the affairs of the Guild." The petitioners submit as exhibits membership lists of other organizations, two of which contain addresses, which are published generally or are made available to the members. The organizations are The National Institute of Arts and Letters, the P. E. N., and the American Society of Composers, Authors and Publishers.

The fourth defense states that the dissident group to which petitioners belong proposed a separate slate of candidates in the elections of 1945; that argumentative matter in support of these candidates was sent out with the ballots, and that the slate was defeated. The respondents refer to a by-law adopted by the council in September, 1946, governing the transmission of material to members. The by-law provides that no member-

ship lists shall be furnished without specific authorization from the council, and that, at the request of fifty members, the secretary shall mail to the membership material dealing with any matter " upon which a mail vote is pending ". The petitioners assert that the procedure set up is altogether inadequate because of the limitation to matters presented for vote, and charge that the by-law was specifically designed to foreclose the relief which petitioners seek.

The fifth defense points out that any fifteen members of the guild may nominate candidates and refers again to the petitioners' unsuccessful effort to win an election, emphasizing the opportunity afforded to the petitioners to send out campaign material with the ballots. The petitioners reply that a single mailing of material cannot substitute for a full and free exchange of information.

The questions presented to the court, broadly stated, are whether the court has power to direct the desired inspection in cases of this type, and, assuming the power, whether and how the court's discretion should be exercised in this particular case.

The courts of this State have many times held, in connection with stock corporations, that there is an inherent power, apart from and unaffected by particular statutory provisions, to order a disclosure of corporate books and records to a petitioning stockholder. No valid distinction can be made on the ground that a membership corporation rather than a stock corporation is involved. While counsel have not brought to the court's attention any case dealing with an inspection of the books and records of a membership corporation, the power of mandamus, from which the power to issue an order of this type under article 78 is derived, is not limited to stock corporations. In the leading case on this general subject (*Matter of Steinway,* 159 N. Y. 250, 258), the Court of Appeals, after a careful historical review of the jurisdiction of the Supreme Court, stated: " The right of a corporator, who has an interest in common with the other corporators, to inspect the books and papers of the corporation, for a proper purpose and under reasonable circumstances, was recognized by the Courts of King's Bench and Chancery from an early day, and enforced by motion or mandamus, but always with caution so as to prevent abuse." The English precedents which the court cited in support of this statement were not limited to cases dealing with stock corporations (see, for example, *Rex* v. *Fraternity of Hostmen,* 2 Str. 1223; *King* v. *Shelley,* 3 D. & E. 141; *King* v. *Babb,* 3 D. & E. 579; *Young* v. *Lynch,* 1 W. Bl. 27). The power has been recog-

nized by the courts of this State in connection with a mutual life insurance company which was not a stock corporation (*People ex rel. Venner* v. *New York Life Insurance Co.*, 111 App. Div. 183, where, on the facts, it was held that in allowing inspection the lower court's discretion was improperly exercised).

The respondents cite section 26 of the Membership Corporations Law, stating that the petitioners seek their relief under that section and that none of the situations specified in that section is present here. However, the petition is not based on that section nor are the petitioners' rights limited by its provisions. Although the term "visitation" is applied both to the power to order inspection and to the power contemplated in section 26, it is clear that something quite different from what is sought here is dealt with in that section. The statute is directed to situations where it is shown that the corporation has been mismanaged; the power of mandamus to compel disclosure goes beyond the field of mismanagement (*Matter of Durr* v. *Paragon Trading Corp.*, 270 N. Y. 464), and the enactment of this statute cannot be deemed to have extinguished the inherent power (cf. *Matter of Steinway*, 159 N. Y. 250, *supra*). The power, then, exists; there is no doubt, however, that it is a discretionary one (*Matter of Steinway*, 159 N. Y. 250, *supra; Matter of Durr* v. *Paragon Trading Corp.*, 270 N. Y. 464, *supra; Matter of Schulman* v. *Dejonge & Co.*, 270 App. Div. 147; *Matter of Goldberg*, 248 App. Div. 729; cf. *Henry* v. *Babcock & Wilcox Co.*, 196 N. Y. 302).

In determining whether the present case is an appropriate one for the exercise of the power, the procedural aspect of the application must be kept in mind. Under section 1295 of article 78, there must be a trial if the papers on the application disclose a triable issue of fact. However, the mere presence of factual disputes does not require a trial where those facts which are undisputed furnish a basis for the exercise of the court's discretion. (See *Matter of Durr* v. *Paragon Trading Corp.*, 270 N. Y. 464, 470, *supra.*)

The standard which governs the exercise of the court's discretion is easily stated. Ordinarily, the court will direct a corporation to open its books and records to its members if the purpose for which inspection is sought appears to be a proper one. However, as the cases cited above show, the order of inspection will by no means issue perfunctorily upon the mere statement of a purpose which appears to be proper, and its issuance may be subject to such limitations and safeguards

as the circumstances require. The blackmailer, the scandal-monger, the irresponsible busybody and troublemaker, the professed seeker of information which is really intended to be used for some ulterior purpose, will be given no consideration by the court.

The propriety of petitioners' purpose is revealed by respondent, although, paradoxically, the revelation is made as part of an argument in opposition. Much of what respondent has to say against the application is summarized in the concluding sentence of its brief, which states: " It is clear that the undisclosed purpose of the group is to attack the governing body * * *." This purpose is neither undisclosed nor improper. A distinction must be made between an attempt to subvert an organization and an attempt to impugn or to replace its present leadership. The former, of course, could not furnish the basis for the issuance of the writ; the corporation obviously should not be compelled to aid in its own harm or destruction. But it is the interests of the corporation, and not those of the group which holds power within the corporation, which the court must protect. The amendment of a corporation's procedures and the replacement of its present officers are legitimate objectives for members of the corporation. The petitioners' projects, in aid of which they seek the disclosure, are directed toward what they conceive to be the interests of the membership. It is not for the court to say how well they are adapted toward that end, or whether the petitioners' or the respondents' program is better for the members of the corporation. Respondents' papers contain no averment that petitioners seek the disclosure for some purpose other than those described above. Accordingly, there is no triable issue of fact as to the propriety of the petitioners' purpose.

The purpose being proper, are there any considerations which require that the application be denied? The respondents urge that disclosure of the names and addresses of the members would be dangerous. The dangers do not seem to me to be serious enough to deny to the petitioners the access which they might otherwise have. The problems peculiar to a stock corporation (where the right to lists of shareholders and bondholders is governed by statute) are not present here; we are not faced with the risk that a list of security holders may be used by those having knowledge which the scattered investors lack, to the detriment of those investors and to the profit of those possessing the list. The only concrete danger which respondents set forth is that the list would have " a high

financial value to organizations whose business it is to sell lists ' of prospects ' in various fields of business endeavor.'' This danger cannot be regarded as a serious one. Nor can the fact that various members have requested that their addresses be kept confidential be given weight on this application. Section 46 of the Membership Corporations Law provides that the directors of a membership corporation shall present at its annual meeting a report which includes, among other things, the names and addresses of all persons who have become members of the corporation during the preceding year. If this provision is complied with, a complete membership list is available to any member who attends all the yearly meetings. Since the statute contemplates this degree of publicity, the court cannot say that there are reasons for keeping the membership list secret which must outweigh the considerations in favor of disclosure.

However, the order will enjoin the use of the list for any purposes other than those related to guild affairs. There may be situations where, instead of ordering access to the list of the names and addresses of members, it would suffice to direct the mailing to the membership at large of material prepared by objecting members. Here, however, such an expedient would not serve petitioners' legitimate purposes. The expense of copying the list of members and their addresses must, of course, be borne by the petitioners.

Respondents' objections to disclosing the minutes of the council meetings are more substantial, for the potentialities of harm described by the respondents are real. The discussions at council meetings may well involve matters which, from the point of view of the general membership, should be kept confidential. No case has been cited by counsel dealing with an inspection of minutes of the executive board of a corporation. While the mandamus power undoubtedly extends to all corporate books and records (see *Matter of Brentmore Estates, Inc.*, v. *Hotel Barbizon*, 263 App. Div. 389, 394), a wise discretion may dictate that certain records are to be more jealously guarded than others. Included in the category of records which the courts should be slow to open are records of the deliberations of the governing bodies of organizations whose activities include arm's length negotiations with outsiders.

However, the principal object of the petitioners in this regard — information concerning the past activities of the council — can be substantially accomplished without disclosing the confidential discussions or transactions which respondents urge should be kept secret. This can be done by limiting the

disclosure to the dates of the meetings, the names of those present, the subjects that were taken up, and the formal resolutions and action taken at each meeting. The respondents will not be required to disclose minutes of proposals, discussions or negotiations, nor will they be required to disclose resolutions dealing entirely with the action taken in matters limited in scope to the affairs of individual members of the organization. These limitations are imposed, not in the interests of the present governing officials, but in the interests of the membership as a whole. If there is any substantial difficulty concerning the scope of the inspection of the minutes, as above limited, the order to be settled may provide that the inspection take place under the supervision of a referee to be appointed by the court.

Certain of respondents' objections not specifically dealt with above may be referred to briefly. The petitioners' legitimate purposes being proved, it does not matter that the petition charges no bad faith, malice or violation of organization rules. The various arguments based on the court's unwillingness to interfere with the management of corporations, and cases such as *City Bank F. T. Co.* v. *Hewitt Realty Co.* (257 N. Y. 62), *Flynn* v. *Brooklyn City R. R. Co.* (158 N. Y. 493) and *Van Campen* v. *Olean General Hospital* (210 App. Div. 204), have no bearing on the present issue. The council's decision not to accede to the petitioners' request cannot be regarded as a matter of internal management within the meaning of those cases. If it were to be so regarded, every attempt to inspect corporate records, except where the petitioner could show fraud or bad faith, could be forestalled by the simple device of passing a resolution. The " clear legal right " which the decisions mention is established, as the cases cited earlier in the opinion demonstrate, when a member seeks inspection for a proper purpose. The petitioners have " substantial property rights " in whose aid the court's processes may be invoked, as do the members of a union in an analogous situation (cf. *Dusing* v. *Nuzzo*, 177 Misc. 35).

On the papers before me, it is not questioned that the petitioners are members of the guild. The disclosure they seek is in connection with plans designed — whether well or poorly designed is immaterial — for the benefit of the corporation. The petitioners' application is granted; the disclosure will be limited, however, in the manner described above, in accordance with what appears to be the best interests of the membership.

The disclosure, despite all safeguards, may result in some inconvenience; the possibility that harm may ensue cannot be

entirely avoided. But these risks are, in the present case, greatly outweighed by the benefits to be derived from a more democratic form of procedure that will give all 'members information as to how their organization is being managed and afford them the opportunity to place their views as to its conduct before their fellow members.

Settle order in accordance with the foregoing determination.